**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| LAQUITA OLIVER and CHERELLE JACOB, <br><br> on behalf of themselves and all others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br> NAVY FEDERAL CREDIT UNION, <br><br> Defendant. | CASE NO. 1:23-cv-01731 <br><br> CLASS ACTION |
| KRISTOFFER HICKS and MASHEESHA HOPPER, <br><br> on behalf of themselves and all others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br> NAVY FEDERAL CREDIT UNION and JOHN DOES 1-20, <br><br> Defendants. | CASE NO. 1:23-cv-01798 <br><br> CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE ACTIONS AND APPOINT INTERIM CLASS COUNSEL PURSUANT TO RULE 23(g)(3) OF FEDERAL RULES OF CIVIL PROCEDURE**

**Dated:** December 29, 2023

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................4

FACTUAL BACKGROUND.................................................................................5

    A.    Defendant Navy Federal. .................................................................5

    B.    Navy Federal's Discriminatory Practices...........................................6

    C.    The Oliver Action...............................................................................8

    D.    The Hicks Action.................................................................................9

THE *OLIVER* AND *HICKS* ACTIONS SHOULD BE CONSOLIDATED ................................10

THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL ...........................................11

    A.    Legal Standard. ...............................................................................12

    B.    Appointment of Interim Class Counsel Is Appropriate Here Because It Will Protect the Interests of the Proposed Class and Promote the Efficient Litigation of These Actions.............................................................13

    C.    Proposed Interim Class Counsel Have Committed Substantial Time and Resources Identifying and Investigating Plaintiffs' Claims Against Navy Federal. ...............................................................................13

    D.    Proposed Interim Class Counsel Have the Experience and Expertise to Represent Plaintiffs and the Proposed Classes Fairly and Effectively.....................14

            1.    Adam Levitt and DiCello Levitt Are Qualified to Serve as Interim Class Counsel. ...................................................................14

                       a.    Lead Attorney—Adam Levitt.................................................14

                       b.    Diandra "Fu" Debrosse Zimmermann .................................17

                       c.    Daniel R. Schwartz .............................................................18

            2.    Ben Crump and Ben Crump Law PLLC Are Qualified to Serve as Interim Class Counsel.................................................................19

            3.    Hassan Zavareei and Tycko & Zavareei Are Qualified to Serve as Interim Class Counsel.................................................................21

                       d.    Lead Attorney—Hassan Zavareei.......................................21

                       e.    Andrea Gold ........................................................................25

                       f.    Glenn Chappell ...................................................................27

                       g.    Peter Silva...........................................................................27

1

h.    Wesley Griffith ...........................................................................28

i.    Tycko & Zavareei Has Significant Experience in This Court. ...............................................................................................28

j.    Tycko & Zavareei Has Significant Experience Litigating Against Navy Federal..........................................................................29

E.    Proposed Interim Class Counsel Understand the Applicable Law. .......................30

F.    Proposed Interim Counsel Will Commit the Resources Necessary to Completely Litigate this Matter. ...................................................30

G.    Additional Considerations Also Favor Appointment of Proposed Interim Class Counsel...........................................................................31

CONCLUSION ......................................................................................................33

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Baker v. Saint-Gobain Performance Plastics Corp.*
2016 WL 4028974 (N.D.N.Y. July 27, 2016) .......................................................... 12

*Blake v. R&B Corp. of Virginia*
2023 WL 4646102 (E.D. Va. July 20, 2023) ...................................................... 10, 14

*Darrin v. Huntington Ingalls Indus.*
2023 WL 4938072 (E.D. Va. July 6, 2023) .............................................................. 11

*Grad v. Ironnet, Inc.*
2022 WL 2789899 (E.D. Va. July 15, 2022) ............................................................ 11

*Harrell v. Tutt, Taylor & Rankin Real Est. LLC*
2020 WL 9348161 (E.D. Va. Dec. 9, 2020) ............................................................. 11

*Roe v. Arch Coal, Inc.*
2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ............................................................ 13

*Solomon v. Am. Web Loan, Inc.*
2018 WL 10579660 (E.D. Va. Sept. 17, 2018) ........................................................ 12

*Szymczak v. Nissan N. Am., Inc.*
2012 WL 1877306 (S.D.N.Y. May 15, 2012) .......................................................... 13

**STATUTES AND REGULATORY AUTHORITIES**

Civil Rights Act of 1866
42 U.S.C. § 1981 ................................................................................................... 9, 10

Declaratory Judgment
28 U.S.C. § 2201 ........................................................................................................ 10

Equal Credit Opportunity Act
15 U.S.C. §§ 1691, *et seq.* ..................................................................................... 9, 10

Fair Housing Act of 1968
42 U.S.C. §§ 3601, *et seq.* ..................................................................................... 9, 10

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION § 21.11 (4th ed. 2004) ................................... 12, 13

**RULES**

FED. R. CIV. P. 23 ........................................................................................................ 12

FED. R. CIV. P. 42 ................................................................................................... 10, 11

Plaintiffs, by their undersigned counsel ("Proposed Interim Class Counsel"), respectfully submit this memorandum of law in support of their Motion to Consolidate *Oliver, et al., v. Navy Federal Credit Union,* Case No. 1:23-cv-01731 (the "*Oliver* Action") and *Hicks, et al., v. Navy Federal Credit Union, et al.,* Case No. 23-cv-1798 (the "*Hicks* Action") and Appoint Adam J. Levitt of DiCello Levitt LLP, Ben Crump of Ben Crump Law PLLC, and Hassan Zavareei of Tycko & Zavareei LLP as Interim Class Counsel on behalf of the putative classes.

## **INTRODUCTION**

Navy Federal Credit Union ("Navy Federal") systemically discriminates against racial minorities in home mortgage lending. As Navy Federal's *own data* shows, despite only denying 23% of white applicants, in 2022, Navy Federal, denied Black home loan applications at a rate of 52%, denied Latino home loan applications at a rate of 44%, and denied Native American home loan applications at a rate of 36%. As a recent third-party analysis of Navy Federal's data explained:

> Navy Federal had statistically significant racial disparities in its mortgage approval rates while holding constant more than a dozen different variables including the applicant's income and debt-to-income ratio, the loan amount, the property value, and the neighborhood's socioeconomic makeup.
>
> Even among applicants who were identical among all those variables, the analysis found, Black applicants were more than twice as likely to be denied as White applicants, and Latino applicants were roughly 85% more likely to be denied than White applicants.[1]

Said differently, Navy Federal's own data reflects one clear and unmistakable conclusion: Navy Federal—the nation's largest credit union, with over $165 billion in assets and 13 million members—systemically and intentionally discriminates against minority borrowers across the United States.

---

[1] *Hicks* ECF No. 1 at Ex. A; *Oliver* ECF No. 1 at ¶ 28.

Two putative nationwide class actions have been filed in this Court challenging Navy Federal's discriminatory lending practices.[2]  The *Oliver* Action was filed on December 17, 2023 by Mr. Levitt and Mr. Crump, and on December 28, 2023, the *Hicks* Action was filed by Mr. Zavareei.  The Complaints in the two actions are substantially similar, as they both bring putative class claims for racially discriminatory lending under federal law and seek to hold Navy Federal accountable for its discriminatory practices.  Counsel in the *Oliver* and *Hicks* Actions have since met and conferred and believe that consolidating the two actions and the consensus appointment of interim class leadership would promote the efficient and fair prosecution of these actions and is in the best interest of the putative classes.

Accordingly, as further detailed below, Proposed Interim Class Counsel respectfully seek an order consolidating the *Oliver* and *Hicks* Actions and appointing Mr. Levitt, Mr. Crump, and Mr. Zavareei as Interim Co-Lead Counsel on behalf of the putative classes.

## FACTUAL BACKGROUND

### A.    Defendant Navy Federal.

Navy Federal is the largest credit union in the United States—with more than $165 billion in assets, over 13 million members, and over 14,000 employees—and is headquartered within the district in Vienna, Virginia. *Oliver* ECF No. 1 at ¶ 14; *Hicks* ECF No. 1 at ¶ 23.  Navy Federal primarily serves members of the military, military families, and veterans.  According to Navy Federal's website, "[t]o become a member, you or one of your family or household members must have ties to the armed forces, DoD or National Guard."  *Hicks* ECF No. 1 at ¶ 24.  Navy Federal provides banking services for its members throughout the United States, including first and second

---

[2] Proposed Interim Class Counsel are not presently aware of any substantially similar actions filed in this Court or elsewhere. Navy Federal is headquartered within the Eastern District of Virginia, making it the logical place for the *Oliver* and *Hicks* Actions (and any later filed actions) to proceed.

lien residential mortgages, residential mortgage refinancings, and home equity lines of credit. *Oliver* ECF No. 1 at ¶¶ 15-17; *Hicks* ECF No. 1 at ¶ 25.

Like all residential mortgage lenders, Navy Federal is required to submit Home Mortgage Disclosure Act ("HMDA") data to the Consumer Financial Protection Bureau ("CFPB").  *Hicks* ECF No. 1 at ¶ 42.  That data is in turn anonymized and made publicly available on the CFPB's website. *Id.*

**B.      Navy Federal's Discriminatory Practices.**

A recent third-party analysis of Navy Federal's 2022 HMDA data shows that Navy Federal rejects a disproportionate number of non-white applicants.  *Oliver* ECF No. 1 at ¶¶  20-32; *Hicks* ECF No. 1 at Ex. A.  Specifically, according to Navy Federal's *own* 2022 data:

- Navy Federal denied African American home loan applications at a rate of 52%, while it only denied 23% of white applicants. *Id.*

- Navy Federal denied Latino home loan applications at a rate of 44%, while it only denied 23% of white applicants. *Id.*

- Navy Federal denied Native American home loan applications at a rate of 36%, while it only denied 23% of white applicants. *Id.*

In fact, an African American person earning $140,000 or more per year had approximately the same odds of being approved for a home loan by Navy Federal as a white applicant who only earned $61,000 or less, according to the 2022 data:



*Oliver* ECF No. 1 at ¶ 25; *Hicks* ECF No. 1 at ¶ 48.

A December 2023 thirty-party analysis of Navy Federal's data found that:

> Navy Federal had statistically significant racial disparities in its mortgage approval rates while holding constant more than a dozen different variables[3] including the applicant's income and debt-to-income ratio, the loan amount, the property value, and the neighborhood's socioeconomic makeup.

> Even among applicants who were identical among all those variables, the analysis found, Black applicants were more than twice as likely to be denied as White applicants, and Latino applicants were roughly 85% more likely to be denied than White applicants.

*Oliver* ECF No. 1 at ¶ 28; *Hicks* ECF No. 1 at ¶ 49.

---

[3] These variables included: "the applicant's income, the applicant's debt-to-income ratio, the loan amount, the loan term, the loan-to-value ratio, the property value, the presence of a co-applicant, the applicant and co-applicant's sex, the credit scoring model used to generate the applicant's credit score, the primary applicant's age, the minority population percentage of the property's census tract, the median age of housing units in the property's census tract, and the difference between the median income of the metro area and the median income of the property's census tract." *Hicks* ECF No. 1 at Ex. A; *see also Oliver* ECF No. 1 at ¶ 23.

And the data shows that the gap in approval rates has nearly tripled over the past five years:



*Hicks* ECF No. 1 at ¶ 50.

Said differently, Navy Federal's own data reflects one clear and unmistakable conclusion: Navy Federal—the nation' largest credit union, with over $165 billion in assets and 13 million members—systemically and intentionally discriminates against minority borrowers across the United States.

**C.      The Oliver Action.**

On December 17, 2023, Mr. Levitt and Mr. Crump filed the *Oliver* Action in this Court challenging Navy Federal's discriminatory lending practices. *Oliver* ECF No. 1. The crux of the *Oliver* Action is that the HMDA data shows that Navy Federal engages in systemic, discriminatory lending throughout the country. *See id.*

There are two proposed class representatives in the *Oliver* Action, Laquita Oliver and Cherelle Jacob. Each is Black, each is a long time Navy Federal member, each applied for mortgages through Navy Federal for which they were qualified, but had their applications denied by Navy Federal because of their race.

Plaintiffs Oliver and Jacob seek to represent a class of:

> All minority residential loan applicants from 2018 through the present (the "Class Period") who submitted an application for an original purchase or other home mortgage loan through Defendant, who sought to refinance or

modify a home mortgage loan through Defendant, or who sought a Home Equity Line of Credit from Defendant and whose application was: (a) denied; (b) approved at higher interest rates or subject to less favorable terms as compared to similarly situated non-minority applicants; or (c) processed at a rate slower than the average processing time of applicants submitted by similarly situated non-minority applicants.

*Id.* at ¶ 40.

The Oliver Action brings claims for violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* (*id.* at ¶¶ 51-57)*,* violation of the Fair Housing Act of 1968, 42 U.S.C. §§ 3601, et seq. (*id.* at ¶ 58-65), and violation of Civil Rights Act of 1866, 42 U.S.C. § 1981 (*id.* at ¶¶ 66-70)*.*

**D.     The Hicks Action.**

On December 28, 2023, Mr. Zavareei (and this team) filed the *Hicks* Action in this Court challenging Navy Federal's discriminatory lending practices.  *Hicks* ECF No. 1.  Like the *Oliver* Action, the crux of the *Hicks* Action is that the HMDA data shows that Navy Federal engages in systemic, discriminatory lending throughout the country.  *See id.*

There are two proposed class representatives in the *Hicks* Action, Kristoffer Hicks, and Masheeha Hopper.  Each is Black, each was a long time Navy Federal member, each applied for mortgages through Navy Federal for which they were qualified, but each had their applications denied by Navy Federal because of their race. *See Hicks* ECF No. 1 at ¶¶ 58 - 95.

Plaintiffs Hicks and Hopper seek to represent the following class:

All Applicants in the United States who, from 2018 through the present (the "Class Period"), submitted an application for a home mortgage loan (including home refinancing) to Navy Federal that was either denied or approved on less favorable terms as compared to similarly situated white applicants.

*Id.* at ¶93.

The *Hicks* Action brings claims for violation of the Fair Housing Act of 1968, 42 U.S.C. §§ 3601, *et seq.* (*id.* at ¶¶ 104 - 111), violation of Civil Rights Act of 1866, 42 U.S.C. § 1981 (*id.* at ¶¶ 112 - 119), violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* (*id.* at ¶¶ 120 - 128), and Declaratory Judgment, 28 U.S.C. § 2201 (*id.* at ¶¶ 129 - 133).

## THE *OLIVER* AND *HICKS* ACTIONS SHOULD BE CONSOLIDATED

Rule 42 of the Federal Rules of Civil Procedure permits this Court to consolidate cases where two or more actions involve "common question[s] of law or fact." While courts "have broad discretion in determining whether to consolidate cases," as the Eastern District has previously explained, "it is obvious that . . . cases should be consolidated [where] [a]ll are class action suits that allege claims against a single defendant arising out of a [common set of facts]" and "[m]any of the claims and relief sought in the complaints overlap." *Blake v. R&B Corp. of Virginia,* 2023 WL 4646102, at *1 (E.D. Va. July 20, 2023).

Here, it is clear that the *Oliver* and *Hicks* actions should be consolidated for multiple reasons, including: (1) both actions challenge Navy Federal's discriminatory home mortgage lending practices and raise substantially similar factual and legal allegations against Navy Federal; (2) a third-party analysis of Navy Federal's HMDA data showing racially discriminatory lending is central to the allegations in both actions; (3) there is substantial overlap in the proposed class definitions between the two actions; (4) there is substantial overlap between the specific causes of action brought against Navy Federal in both actions; (5) counsel for Plaintiffs and the putative classes in both actions agree that it would be more efficient for the two actions to proceed as a consolidated action against Navy Federal rather than prosecuted separately; (6) a consolidated action would conserve judicial resources by allowing a single judge to address these two overlapping actions in a single proceeding; (7) a consolidated action would avoid risks of

inconsistent rulings and avoid prejudice to any party from inconsistent obligations between the two actions; (8) there is no risk for confusion arising from the early consolidation of these two action, which have been pending for less than a month; and (9) the relief sought against Navy Federal on behalf of the putative classes is substantially similar.

Indeed, in similar circumstances, the Eastern District frequently grants consolidation. *See, e.g., Darrin v. Huntington Ingalls Indus.,* 2023 WL 4938072, at *2 (E.D. Va. July 6, 2023) (granting consolidation where multiple putative class actions arose from single set of facts); *Grad v. Ironnet, Inc.,* 2022 WL 2789899, at *7 (E.D. Va. July 15, 2022) (ordering consolidation of "any pending subsequently filed, removed, or transferred actions that are related to the claims asserted in the above-captioned action"); *Harrell v. Tutt, Taylor & Rankin Real Est. LLC,* 2020 WL 9348161, at *4 (E.D. Va. Dec. 9, 2020) (granting consolidation where substantial overlap in facts risked subjecting defendants to inconsistent rulings if actions were not consolidated).

Accordingly, Plaintiffs in both the *Oliver* and *Hicks* Actions respectfully request that the two matters be consolidated pursuant to Rule 42, and that Proposed Interim Class Counsel be ordered to file a consolidated complaint within 30 days of consolidation.[4]

## **THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL**

The Proposed Interim Class Counsel team, led by Adam Levitt, Ben Crump, and Hassan Zavareei, showcases an unrivaled collection of skilled and zealous advocates who are uniquely qualified to prosecute these complex putative class actions challenging Navy Federal's racially discriminatory mortgage lending practices.

---

[4] To promote the efficient prosecution of the Actions, Proposed Interim Class Counsel have no objection to Navy Federal's responsive pleading deadlines to the currently operative *Oliver* Action and *Hicks* Action complaints being held in abeyance pending ruling on the current Motion, and if the Motion is granted, setting a responsive pleading deadline to the consolidated complaint 30 days after it is filed.

## A.  Legal Standard.

Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).  "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities . . ." Manual for Complex Litigation § 21.11 (4th ed. 2004).  When appointing interim class counsel, courts look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *Solomon v. Am. Web Loan, Inc.*, 2018 WL 10579660, at *2 (E.D. Va. Sept. 17, 2018).

Rule 23(g)(1)(A) provides that in appointing class counsel, the Court should consider:

> (i)  the work counsel has done in identifying or investigating potential claims in the action;

> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

> (iii) counsel's knowledge of the applicable law; and

> (iv) the resources that counsel will commit to representing the class.

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* R. 23(g)(1)(B); *Solomon*, 2018 WL 10579660, at *2.  Other factors often considered by courts include the ability of counsel to work professionally and civilly; to fairly represent diverse interests; and, their ability "to command the respect of their colleagues and work cooperatively with opposing counsel and the court." *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 116-cv-0220 (LEK/DJS), 2016 WL 4028974, at *4 (N.D.N.Y. July 27, 2016) (citing Manual for Complex Litigation § 10.224).  The purpose of the Court's review is to ensure that counsel appointed to leading roles are qualified and responsible and that they will fairly and adequately represent all of the parties on their side.  *See* Manual for Complex

LITIGATION § 21.22 (4th ed. 2004). The ultimate goal in designating counsel is "achieving efficiency and economy without jeopardizing fairness to the parties." *Id.* at § 10.221.

**B.**     **Appointment of Interim Class Counsel Is Appropriate Here Because It Will Protect the Interests of the Proposed Class and Promote the Efficient Litigation of These Actions.**

Courts have found that appointing interim class counsel protects the interests of the class when there is even a possibility of two firms competing against each other to be appointed lead counsel, where other firms are investigating whether to file additional actions, and where appointment of interim class counsel will provide the benefit of efficient case management. *See Roe v. Arch Coal, Inc.*, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015); *Szymczak v. Nissan N. Am., Inc.*, 2012 WL 1877306, at *2 (S.D.N.Y. May 15, 2012).

Here, Proposed Interim Class Counsel each filed substantially similar putative class actions against Navy Federal based on publicly available HMDA data, there has been significant recent media coverage regarding Navy Federal's discriminatory practices, and because of the public nature of the data and media coverage, additional, substantially similar actions may be filed against Navy Federal in the near term.  In order to conserve their resources and efficiently prosecute these Actions against Navy Federal, Proposed Interim Class Counsel have (subject to Court approval, as requested in this Motion) agreed to work together to prosecute the Actions together in order to ensure that counsel's and this Court's time and resources are focused on adjudicating the merits of the dispute with Navy Federal.

**C.**     **Proposed Interim Class Counsel Have Committed Substantial Time and Resources Identifying and Investigating Plaintiffs' Claims Against Navy Federal.**

Proposed interim class counsel have spent significant time and resources identifying and investigating potential claims for this action.  Mr. Levitt's and Mr. Crump's teams have already committed substantial time and resources to this matter.  They have spoken with hundreds of loan

applicants and have engaged in further factual and expert investigation regarding Navy Federal's lending practices. Additionally, Tycko & Zavareei has committed significant time and resources to developing the facts that are at issue in the *Hicks* Action, including by interviewing and reviewing potential claims of approximately 300 applicants impacted by Navy Federal's discriminatory practices and engaging a data expert to analyze Navy Federal's HMDA data.

Proposed Interim Class Counsel will continue to dedicate substantial and appropriate time and resources needed for successful prosecution of the Actions against Navy Federal.

**D.     Proposed Interim Class Counsel Have the Experience and Expertise to Represent Plaintiffs and the Proposed Classes Fairly and Effectively.**

Proposed Co-Lead Counsel—Adam Levitt, Ben Crump, and Hassan Zavareei—are each founding partners of their respective firms, frequently represent plaintiffs in complex class actions, and have the experience and expertise to represent Plaintiffs and the proposed classes fairly and efficiently in the proposed consolidated Actions. "The appointment of three or more law firms as class counsel in complex cases is not unusual." *Blake v. R&B Corp. of Virginia,* 2023 WL 4646102, at *2 (E.D. Va. July 20, 2023).

**1.     Adam Levitt and DiCello Levitt Are Qualified to Serve as Interim Class Counsel.**

**a.     Lead Attorney—Adam Levitt**

Mr. Levitt is founding partner of DiCello Levitt, LLP, where he heads the firm's class action and public client practice groups. A graduate of Columbia College, Columbia University (A.B., *magna cum laude*) and the Northwestern University Pritzker School of Law (J.D.), he has more than thirty years of experience in complex, high profile litigation and has helped to deliver nearly $20 billion in recoveries to clients in biotechnology, pharmaceutical, financial services, insurance coverage, consumer protection, automotive defects, agricultural products, antitrust, and

securities disputes.

Mr. Levitt has achieved important wins leading dozens of significant litigations on behalf of individuals, businesses, and public clients.  His ability to build and lead winning teams, along with his innovative approach to litigation strategy and willingness to lead difficult cases through trial and beyond, has led to his appointment as lead or co-lead counsel in close to 25 multidistrict litigations. It has also resulted in his retention by institutional investors and multinational corporations, and his retention—through competitive bidding processes—by numerous State Attorneys General in a wide variety of matters, including by the States of Illinois and Michigan in the PFAS water contamination cases, the largest environmental litigations of our lifetime.[5] Moreover, as a court-appointed member of a leadership group characterized as a "class action dream team" in the historic litigation arising from Volkswagen's emissions scandal, Mr. Levitt helped to secure a $16 billion settlement that benefitted car buyers across the United States.[6]  He has also served as co-lead counsel in three of the largest biotechnology class actions in history, and, in doing so, created a game-changing economic model to measure crop contamination damages that set the modern industry standard.[7]

Mr. Levitt's work on behalf of plaintiffs has been recognized locally and nationally in ranking directories, including Chambers USA, where he received a Band 1 ranking for Mainly

---

[5] *Nessel v. 3M Co., et al.*, MDL No. 2873 (D.S.C.); *Nessel v. EI DuPont de Nemours and Co., et al.*, MDL No. 2873 (D.S.C.); *Nessel v. Chemguard, et al.,* MDL No. 2873 (D.S.C.); *Nessel v. Asahi Kasei Plastics N. Am. Inc.*, Case No. 20-30909-NZ (Livingston Cir. Ct.); *People ex rel. Raoul v. 3M Co.*, Case No. 22-cv-4075 (C.D. Ill.).

[6] *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig*., No. 15-MD-2672 (N.D. Cal.).

[7] *In re Genetically Modified Rice Litig*., MDL No. 1811 (E.D. Mo.); *In re Imprelis Herbicide Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2284 (E.D. Pa.); *In re StarLink Corn Prods. Liab. Litig.*, MDL No. 1403 (N.D. Ill.).

Plaintiffs Litigation in Illinois. Chambers USA has also ranked him in Illinois for General Commercial Litigation and nationwide for Product Liability Litigation, where editors described him as the "go-to plaintiffs' attorney in the class action space."  He has also been repeatedly recognized by Benchmark Litigation as a National Litigation Star: Securities and Litigation Star in Illinois, and Lawdragon has named him one of the 500 Leading Plaintiff Financial Lawyers and one of the 500 Leading Plaintiff Consumer Lawyers in the United States.  As further confirmation of his standing in the national class action bar, Mr. Levitt writes a monthly column on class action litigation ("Arguing Class Actions") in the National Law Journal. He is also an elected member of the American Law Institute and the Economic Club of Chicago.

Mr. Levitt co-founded DiCello Levitt, LLP in 2017 to litigate cases like this one. Recently named Plaintiff's Law Firm of the Year by the *National Law Journal*, DiCello Levitt—assembled from some of the country's top complex litigators—has extensive class action and trial experience. One of the few firms of its kind that regularly tries cases to verdict, DiCello Levitt's practice also includes in-house focus group and mock trial programs, led by firm partner Robert DiCello, enabling the firm to develop cases for trial from the outset.  DiCello Levitt's attorneys have obtained jury verdicts across a variety of fields, including verdicts in excess of $100 million in the past fourteen months alone,[8] and have successfully led—and are currently leading—some of the largest and most complex nationwide class actions, including the nationwide data breach litigation against Equifax, where DiCello Levitt successfully represented nearly 148 million people whose data were compromised.[9]

DiCello Levitt is also dedicated to the idea that its lawyers' diverse experience and

---

[8] *See, e.g., Siqueiros v. General Motors*, No. 16-cv-07244 (N.D. Cal.).

[9] *In re Equifax*, No. 17-md-2800 (N.D. Ga.).

backgrounds make them more effective advocates for the wide array of plaintiffs they represent. Indeed, DiCello Levitt has also been on the forefront of diversity initiatives across the United States. It counts among its partners Amy Keller, the youngest woman ever appointed to lead an MDL,[10] Diandra "Fu" Debrosse Zimmermann, the first Black woman ever appointed to lead an MDL,[11] and multiple LGBTQ attorneys who have served or are currently serving in MDL leadership positions.

With more than eighty attorneys in six offices across the United States—and with affiliated counsel in the United Kingdom, the European Union, and Brazil—DiCello Levitt is fully dedicated to this case, in terms of both personnel and capital resources. It has already committed many hours to this litigation and stands ready to commit thousands more. The firm will marshal the resources and time necessary to bring this matter to a successful resolution. Attached as Exhibit 1 to the Declaration of Adam Levitt is a true and correct copy of DiCello Levitt's firm resume, which contains further details regarding the firm's recent achievements in complex litigation.

### b.   Diandra "Fu" Debrosse Zimmermann

Leading the DiCello Levitt team along with Mr. Levitt is Diandra "Fu" Debrosse Zimmermann. Ms. Debrosse Zimmermann co-chairs DiCello Levitt's Mass Tort practice and is the Managing Partner of the firm's Birmingham office. She also co-chairs the firm's national civil rights practice, and is a member of the Public Entity, Catastrophic Personal Injury, Environmental, and Trial practice groups.

Her work has been widely recognized, including through leadership appointments. The first black woman ever to be appointed to lead an MDL, Ms. Debrosse Zimmermann holds

---

[10] *In re Equifax*, No. 17-md-2800 (N.D. Ga.).

[11] *In re: Abbott Labs., et al., Preterm Infant Nutrition Prods. Liab. Litig.*, MDL 3026 (N.D. Ill.).

leadership positions in a number of matters.  She is Co-Lead Counsel of *In re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation*, MDL 3060 (N.D. Ill.) and Co-Lead Counsel of *In re: Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation,* MDL 3026 (N.D. Ill.).  She is also on the Plaintiffs' Executive Committee for *In re: Paraquat Products Liability Litigation*, MDL 3004 (S.D. Ill.) and the Plaintiffs' Steering Committee for *In re: Social Media Adolescent Addiction/Personal Injury Litigation* (MDL No. 3047) (N.D. Cal.), and she represents municipalities in both *In re: National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio) and *In re: McKinsey & Company Inc., National Prescription Opiate Consultant Litigation*, MDL 2996 (N.D. Cal.).  She also formerly held a seat on the Plaintiffs' Steering Committee for *In re: Smith & Nephew Birmingham Hip Resurfacing Hip Implant Liability Litigation*, MDL 2775 (D. Md.), the Plaintiffs' Steering Committee for *In re: Higher One Account Marketing and Sales Practices Litigation,* MDL 2407 (D. Conn.) and represented plaintiffs in many other MDLs.

Ms. Debrosse Zimmermann also leads key civil rights, contamination, and product liability cases, amongst others.  Of note, she represents seven families of those murdered or injured in Buffalo, New York during a violent racist shooting spree in 2022.  Along with Mr. Crump and with DiCello Levitt's full support, Ms. Debrosse Zimmermann, together with Mr. Crump, co-founded Shades of Mass (shadesofmass.org)—an organization dedicated to promoting diversity in the MDL bar.

### c.    Daniel R. Schwartz

Working alongside Mr. Levitt and Ms. Debrosse Zimmermann on this matter will be Daniel R. Schwartz.  Mr. Schwartz is a former Ninth Circuit clerk and graduate of New York University School of Law (*magna cum laude*, Order of the Coif) and, prior to joining DiCello Levitt, worked

at other major international law firms.  He has represented some of the largest and most sophisticated companies in the world, and has extensive experience representing both plaintiffs and defendants through trials and arbitrations in many high-stakes matters, including as a first-chair.  He has helped to secure billions of dollars in value for his clients in disputes ranging from antitrust to intellectual property to employment law.  For example, Mr. Schwartz was a key member of a team that secured a $65 million settlement for wage violations against fifteen defendants on behalf of a class of tens of thousands of au pairs—a case that led to important development of the law regarding when a live-in employee's wage could be subject to a room and board deduction.[12]  In another matter, Mr. Schwartz helped to craft a radical "recharacterization" argument that led his client, a debtor telecommunications company proceeding through bankruptcy, to achieve nearly $2 billion in value from the defendant on the eve of trial.[13]

    **2.**    **Ben Crump and Ben Crump Law PLLC Are Qualified to Serve as Interim Class Counsel.**

Benjamin L. Crump is the founding partner and principal owner of Ben Crump Law, PLLC ("BCL").  BCL is a nationally recognized, Black-owned law firm, fighting for justice and equal rights for marginalized communities.  With multiple offices in several states, BCL has years of experience leading large-scale, complex aggregate litigation, including MDLs and class actions.

Mr. Crump has secured groundbreaking multimillion-dollar settlements for minority families across the country. Notably, BCL obtained a historical $411 million jury verdict for the family of Duane Washington[14], one of the largest jury verdicts in an unprecedented virtual trial. Other landmark settlements include: $641 million for the children of Flint, Michigan; $27 million

---

[12] *Beltran v. Interexchange*, No. 14-cv-03074-CMA-KMT (D. Co.).

[13] *Windstream Holdings Grp v. Uniti Group Inc*., No. 7:10-AP-08279 (Bankr. S.D.NY)

[14] *Washington, et al. v. Top Auto Express, Inc.*, No. 18-CA-000861. (Fla. Cir. Ct. 2020).

for the family of George Floyd[15]; $36 million for the families impacted by the Mill Fire in Weed, California; and a precedent-setting confidential settlement for the family of Henrietta Lacks[16]. BCL has represented families in other high profile civil rights cases including the families of Trayvon Martin, Robbie Tolan, Michael Brown, Brianna Grier, Corey Jones, Danny Ray Thomas, Andre Hill, Stephon Clark, Botham Jean, Ahmaud Arbery, Breonna Taylor, Tyre Nichols, the victims of the Buffalo mass shooting, and others.

In pursuit of justice, Mr. Crump has consistently occupied leadership positions in class action lawsuits and is currently co-lead in the following class actions:

a.   *In re: Hair Relaxer Marketing Sales Practices and Products Liability Litigation*, MDL 3060 (N.D. Ill.).

b.   *Williams, et al.* v. *State Farm Mutual Automobile Insurance Co., et al.*, Case No. 1:20-cv-00121 (N.D. Ill.).

c.   *Moore, et al. v. Gopher Resource, LLC & Envirofocus Technologies LLC*, 21-CA-4494 (Hillsborough Cty. Ct., Fla. 2021).

d.   *Boyd, et al. v. United States of America*, 1:22-cv-01473 (Ct. Cl. 2022).

Mr. Crump was also appointed to the Executive Committee of the Astroworld/Live Nation Mass Tort Litigation in *In re Astroworld Litigation*, No. 2021-79885 (Harris Cty., Tex., 11th Dis. 2021).

BCL has considerable knowledge in the area of banking discrimination.  BCL, together with co-counsel, obtained a greater than $200 million pre-suit settlement against Chase Bank. Further, Mr. Crump is currently serving as co-counsel in a class action banking discrimination lawsuit, representing Black and other minority customers of Wells Fargo.  *Williams, et al.* v. *Wells*

---

[15] *Schaffer v. Chauvin*, 0:20-cv-01577-SRN-TNL (D.Minn. 2020).

[16] *Lacks v. Thermo Fisher Scientific Inc.*, 1:21-cv-02524 (D.Md. 2021).

*Fargo Bank, N.A.*, Case No. 3:22 cv-00990 (N.D. Cal. 2022).

Due to his national profile and substantial experience representing the rights and interests of African Americans and other minority groups in several high-profile cases involving a range of complex legal issues, Mr. Crump is in the best position to get the proverbial "pulse" of the Plaintiffs' community and represent the interests of class members.

Named one of the Most Influential People of 2021 by Time Magazine, Mr. Crump has received considerable accolades that demonstrate his leadership acumen and commitment to representing clients at the highest level.  Awards he has received include Ebony Magazine's Power 100 Most Influential African Americans; National Trial Lawyers Top 100 Lawyers; the 2014 NNPA Newsmaker of the Year award; NAACP Thurgood Marshall Award; SCLC Martin Luther King Servant Leader Award; and the American Association for Justice Johnnie Cochran Award.  In 2023, St. Thomas University Law School in Miami, Florida, was renamed the Benjamin L. Crump College of Law.

     **3.**     **Hassan Zavareei and Tycko & Zavareei Are Qualified to Serve as Interim Class Counsel.**

     **d.**     **Lead Attorney—Hassan Zavareei**

Over his two-decade career as a class action attorney, Hassan Zavareei has distinguished himself in the areas of consumer fraud, unfair and deceptive business practices, privacy law, and a host of other subject matters.  A collaborative leader with a track record of working with diverse groups to obtain outstanding results for his clients, Mr. Zavareei has recovered hundreds of millions of dollars for consumers across the country.  *See, e.g.*, *Duval v. Citizens Fin. Grp., Inc.*, No. 10-cv-21080 (S.D. Fla.) ($137.5 million common fund settlement: "an extraordinary group of lawyers was required to prosecute this case. . . . Class Counsel's efforts in pursuing and settling these consumer claims were, quite simply, outstanding.").  He has substantial experience handling

class actions and complex litigation and is knowledgeable in the applicable law.  *See generally* Declaration of Hassan Zavareei ("Zavareei Decl.").

Mr. Zavareei has been appointed lead counsel, co-lead counsel, or class counsel in dozens of consumer class actions.  In his first MDL leadership role, Mr. Zavareei was appointed lead counsel in *In re Higher One Account Marketing & Sales Practices Litigation*, No. 12-md-02407 (D. Conn.).  Mr. Zavareei settled that case for substantial business changes and a $15 million common fund.  Mr. Zavareei also served on the Executive Committee in MDL litigation against TD Bank—which received final approval for a $70 million settlement.  Final Order and Judgment, *In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, No. 15-mn-02613 (D.S.C.) (ECF No. 233).  As co-lead counsel in *Farrell v. Bank of America*, Mr. Zavareei secured a class settlement valued at $66.6 million along with approximately $1 billion in injunctive relief.  *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630–31 (9th Cir. 2020) ("[C]lass counsel demonstrated tenacity and great skill, achieving a remarkable result in a hard-fought battle despite an adverse legal landscape and the substantial risk of non-payment."  (cleaned up)).  As co-lead counsel in *Vergara v. Uber Technologies*, a nationwide class action under the TCPA, Mr. Zavareei secured a $20 million common fund class settlement.  *Vergara v. Uber Technologies, Inc.*, No. 1:15-cv-06972 (N.D. Ill.).  He was also appointed interim co-lead class counsel in a number of consolidated privacy cases in federal courts across the United States.  *See In Re US Fertility, LLC Data Security Litigation*, No. 8:21-cv-00299-PJM (D. Md.) (appointed Interim Class Counsel in consolidated data breach litigation against nationwide chain of fertility centers); *In re Ring LLC Privacy Litigation*, No. 2:19-cv-10899-MWF-RAO (C.D. Cal.) (appointed interim co-lead counsel in consolidated privacy litigation against Ring LLC); *In re Luxottica of America, Inc. Data Security Breach Litigation*, No. 1:20-cv-00908-MRB (S.D. Ohio) (appointed interim co-lead counsel in

data breach case against national network of eye care centers).  *See also* Zavareei Decl. Ex. A (Firm Resume).

Importantly, Mr. Zavareei has a track record of success in civil rights and racial discrimination cases. For example, he attained a significant settlement on behalf of a cohort of women employees of Hooters restaurants in West Virginia for sexual harassment.  He also litigated and favorably resolved a race discrimination case in the District of Columbia on behalf of several Black employees who alleged they were wrongfully terminated from their positions at an international consulting firm based on their race. *See Disparte v. Corp. Exec. Bd.,* 223 F.R.D. 7 (D.D.C. 2004).   He represented former tenants in the Columbia Heights neighborhood of Washington, D.C. and won a resounding unanimous jury verdict in a housing discrimination lawsuit against the District of Columbia. *2922 Sherman Avenue, et al. v. DC, et al.*, 1:00-cv-00862. He is currently leading litigation against the state of North Carolina for constitutional violations based on its unlawful shackling of a pregnant inmate during childbirth and delivery.  Zavareei Decl. ¶ 8.

Critically, for purposes of this case, Mr. Zavareei has been a leader in litigation against banks and credit unions for unlawful banking practices, including cases against Navy Federal and cases involving mortgage lending practices. *Lloyd v. Navy Federal Credit Union*, No. 3:17-cv-01280-BAS-RBB (S.D. Cal.) ($24.5 million nationwide settlement against Navy Federal); *Lambert v. Navy Federal Credit Union*, No. 19-cv-103-LO-MSN (E.D. Va.) ($16 million settlement against Navy Federal); *McNeil v. Capital One, N.A.*, No. 1:19-cv-00473 (E.D.N.Y) ($16 million settlement against Capital One with preliminary approval pending); *Jacobs v. FirstMerit Corporation, et. al.*, No. 11 CV000090 (Ct. Common Pleas, Lake County, Ohio) ($15,975,000 nationwide settlement against FirstMerit bank).

Mr. Zavareei has successfully tried numerous complex and class cases in state and federal court and has argued and won appeals in the Fourth Circuit, the D.C. Circuit, and the Fifth Circuit Courts of Appeal. Zavareei Decl. ¶ 5.  He also recently tried a multi-week class action case against Fifth Third bank and argued a case before the United States Supreme Court. *Id.* ¶¶ 4, 6.

In recognition of his expertise in class action litigation, Mr. Zavareei was called upon by his colleagues to testify before the Civil Rules Advisory Committee about recent amendments to Rule 23. Zavareei Decl.¶ 11.  He also recently testified before the House Judiciary Committee regarding the TCPA, one of the nation's crucial consumer-protection statutes. *Id.*  Mr. Zavareei is the Vice President of the Board of Directors of Public Justice, P.C., a member the Partners Council of the National Consumer Law Center, and served as an editor of Duke Law School's Guidance on New Rule 23 Class Action Settlement Provisions. *Id.*  He was named a 2021 Class Action MVP by Law360—an award given to only five attorneys in the United States each year for extraordinary wins in and contributions to their practice area.  Anna Sanders, *MVP: Tycko & Zavareei's Hassan Zavareei*, Law360 (Sept. 14, 2021), https://www.law360.com/articles/1412015/mvp-tycko-zavareei-s-hassan-zavareei.  He was also named a Titan of the Plaintiffs' Bar in 2022 by Law 360 for his successful class action work against financial institutions. Zavareei Decl.¶ 13.

As a first-generation Iranian-American, Mr. Zavareei would bring ethnic diversity to the Interim Class Counsel Leadership group.  In addition, Mr. Zavareei's firm, Tycko & Zavareei LLP, is a leader in diversity in the legal profession. Among its 24 attorneys, 15 are women (including seven of the firm's nine partners), five are people of color, and several identify as LGBTQ. Zavareei Decl., Ex. A (Firm Resume).  Mr. Zavareei and his colleagues regularly appear before this Court, as further detailed in Section D.3.h, below.

Mr. Zavareei's track record of success leading complex class cases, commitment to the public interest, expertise in consumer protection and food law, willingness to think outside the box, and enthusiasm for novel case theories make him well qualified to lead this litigation.

### e.    Andrea Gold

In her 17 years of practice, Ms. Gold has excelled in every aspect of high-stakes class action practice: she has successfully defended dispositive motions, navigated complex discovery, worked closely with leading experts, obtained contested class certification, and negotiated numerous nationwide settlements.

Ms. Gold currently serves as Chair of the Plaintiffs' Executive Committee in two large MDLs against some of the world's largest technology companies—Apple, Inc. and Google LLC— as well as a similar consolidated action against Facebook (now Meta, Inc.).  *See In re Apple Inc. App Store Simulated Casino-Style Games Litigation*, No. 5:21-md-2985 (N.D. Cal.); *In re Google Play Store Simulated Casino-Style Games Litigation*, No. 5:21-md-3001 (N.D. Cal.); *In re Facebook Simulated Casino-Style Games Litigation*, No. 5:21-cv-2777 (N.D. Cal.).  In those cases, Ms. Gold assisted in largely defeating the defendants' motions to dismiss, with those decisions now up on appeal in the Ninth Circuit.

She has significant experience, and has achieved remarkable results, in class action leadership roles, including in banking litigation against the country's largest financial institutions including Navy Federal.  Specifically, Ms. Gold secured a $24.5 million nationwide settlement in a case challenging a Navy Federal fee assessment practice.  Order Granting Motion for Final Approval of Class Settlement, *Lloyd v. Navy Federal Credit Union*, No. 3:17-cv-01280-BAS-RBB, (Dkt. 70) (S.D. Cal.).  Moreover, Ms. Gold and co-counsel just recently resolved another bank fee case against Navy Federal for $16 million with preliminary approval of the settlement

pending. *Lambert v. Navy Federal Credit Union*, No. 19-cv-103-LO-MSN (E.D. Va.).;

As co-lead counsel in *Vergara v. Uber Technologies, Inc.*, Ms. Gold secured a $20 million nationwide TCPA settlement against Uber after hard-fought litigation. *Vergara v. Uber Techs., Inc.*, No. 1:15-CV-06942, (Dkt. 110) (N.D. Ill.)  As class counsel on behalf of consumers alleging harm from defective microwave oven drawers, she obtained a nationwide class settlement valued at over $103 million.  Final Approval Order, *Hamm v. Sharp Elecs. Corp.*, No. 5:19-cv-488-Oc-30PRL, (Dkt. 62) (M.D. Fla.).  And, as class counsel in novel litigation challenging an insurance company's pricing practices, she secured a $15 million settlement after years of contested litigation. *Harris v. Farmers Insurance Exchange*, No. BC579498 (Cal. Sup. Ct.).  Ms. Gold has resolved another similar case against insurer Allstate Insurance Co. for $25 million.  *Stevenson v. Allstate Insurance Co. et al*, No. 4:15-cv-04788-YGR (N.D. Cal.).

Ms. Gold has also achieved groundbreaking successes in complex civil rights class action litigation.  For the past several years, Ms. Gold has been co-leading litigation challenging debtors' prisons on constitutionality grounds in two municipalities outside of St. Louis, Missouri.  *See Webb v. Maplewood*, No. 4:16-cv-01703 (E.D. Mo.) ($3,250,000.00 common fund settlement plus significant non-monetary classwide relief); Baker et al v. City of Florissant, Case No. 4:16-cv-1693-RHH ($2,890,000.00 common fund settlement plus significant non-monetary classwide relief, with preliminary approval pending).  After defeating motions to dismiss in both cases (and an appeal to the Eighth Circuit), Ms. Gold successfully achieved contested class certification in both cases and  negotiated excellent classwide settlements including important practice changes in both cases.

These cases are representative of Ms. Gold's tireless efforts and numerous successes on behalf of her clients throughout her career as a class action litigator.  Ms. Gold's credentials are

further detailed on her firm biography, which is attached to the Zavareei Declaration as Exhibit A.

### f.   Glenn Chappell

Glenn Chappell litigates on behalf of consumers in trial and appellate courts across the country. He is currently representing plaintiffs in class action, multidistrict, and appellate proceedings involving mortgage lending practices, consumer privacy, contract and insurance law, deceptive marketing, addictive product design, and unlawful trade practices. He maintains an active practice in this District and clerked in the Alexandria Division for the Hon. Anthony J. Trenga during the 2018-19 term. He is a member of the Plaintiffs' Executive Committee in three consolidated matters against some of the world's largest online businesses. *See In re Apple Inc. App Store Simulated Casino-Style Games Litigation,* No. 5:21-md-2985 (N.D. Cal.); *In re Google Play Store Simulated Casino-Style Games Litigation,* No. 5:21-md-3001 (N.D. Cal.); *In re Facebook Simulated Casino-Style Games Litigation,* No. 5:21-cv-2777 (N.D. Cal.). Mr. Chappell also serves as chair of Tycko & Zavareei's Appellate Practice Group. Mr. Chappell's credentials are further detailed on his firm biography, which is attached to the Zavareei Declaration as Exhibit A.

### g.   Peter Silva

For more than 13 years, Mr. Silva, who is Latino, has represented clients in civil rights and consumer protection actions.  Focusing on the rights of mortgage borrowers, Mr. Silva has successfully represented dozens of individuals in litigation against mortgage lenders and mortgage servicers for violations of state and federal laws.  Mr. Silva's experience provides him with an in-depth knowledge of the legal framework of mortgage lending as well as the practical considerations.  Mr. Silva regularly presents on legal issues facing mortgage borrowers.  He currently serves as an Of Counsel in Tycko & Zavareei's Washington D.C. office, with his practice

focusing on representing consumers in individual and class actions before state and federal courts. Mr. Silva's credentials are further detailed on his firm biography, which is attached to the Zavareei Declaration as Exhibit A.

**h.     Wesley Griffith**

Mr. Griffith currently serves as an Of Counsel in Tycko & Zavareei's Oakland office, with his practice focusing on representing consumers in class actions before state and federal courts. Before joining Tycko & Zavareei in 2022, Mr. Griffith spent a decade at two large defense firms, with his practice largely focusing on the defense of class actions.  Mr. Griffith's extensive experience defending complex class actions gives him a unique perspective on how to effectively litigate on behalf of his consumer clients.  Mr. Griffith also has experience working on civil rights actions, having first and second chaired several 1983 civil rights cases in the Eastern District of California and worked at the University of Chicago Employment Discrimination Project Clinic.

Mr. Griffith is graduate of the University of California, Berkeley, and the University of Chicago Law school, and his credentials are further detailed in his firm biography, which is attached to the Zavareei Declaration as Exhibit A.

**i.     Tycko & Zavareei Has Significant Experience in This Court.**

In addition to the enumerated Rule 23(g)(1)(A)(ii) factors, the Court, in appointing class counsel, "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Accordingly, the Court may consider that Tycko & Zavareei has substantial experience in this District.  *See, e.g.*, *Lambert v. Navy Fed. Credit Union*, No. 19-cv-103-LO-MSN (E.D. Va.) ($16 million common fund settlement in bank fee class action led by Tycko & Zavareei); *Gibbs v. TCV V, LP*, No. 19-cv-789 (E.D. Va.) (Tycko & Zavareei served in co-counsel group that achieved settlement in payday-lending class action resulting in $50 million

common fund and cancellation of $383 million in consumer debts); *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va.), Dec. 13, 2019 Order at Dkt. 141 (granting final approval of class settlement in lending class action led by Tycko & Zavareei). Mr. Zavareei also briefed and argued an appeal in the Fourth Circuit that resulted in a widely cited decision affirming the district court's invalidation of an arbitration agreement in a payday-lending class action. *See Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017).

In granting preliminary approval of a settlement reached by Tycko & Zavareei, Judge Lauck observed that Tycko & Zavareei has "distinguished themselves nationwide, but, more importantly, in the Eastern District of Virginia as premier consumer litigation counsel." Zavareei Decl. Ex. B (Transcript at 48-49, *Gibbs v. TCV V, L.P.*, No. 3:19-CV-789 (E.D. Va.)). Judge Lauck noted that "Tycko and Zavareei . . . has been named as class counsel and lead counsel and settlement class counsel by our own court and at least 40 other class actions in state and federal court, and I have appointed them previously to serve as class counsel. Their experience as previous class counsel and with complex cases involving accused predatory financial practices has certainly been an asset in matters before this court." *Id.*

The experience and reputation of Proposed Interim Class Counsel in this Court further support appointing Mr. Zavareei as co-Interim Class Counsel here.

> **j.     Tycko & Zavareei Has Significant Experience Litigating Against Navy Federal.**

In addition to its general class action expertise and experience in this Court, Tycko & Zavareei also has significant experience litigating class proceedings against Navy Federal and securing excellent results. For example, in *Lloyd v. Navy Federal Credit Union*, No. 3:17-cv-01280-BAS-RBB (S.D. Cal.), Tycko & Zavareei, lead by Mr. Zavareei and Ms. Gold, secured at

$24.5 million nationwide settlement in a case challenging a Navy Federal fee assessment practices. Likewise in *Lambert v. Navy Fed. Credit Union*, No. 19-cv-103-LO-MSN (E.D. Va.), Tycko & Zavareei, again lead by Mr. Zavareei and Ms. Gold, secured at $16 million settlement against Navy Federal.

**E.      Proposed Interim Class Counsel Understand the Applicable Law.**

Proposed Interim Class Counsel all have a deep understanding of the applicable law. As detailed above, they have robustly researched the facts and law relevant to these Actions in preparing their respective Complaints and have deep experience in complex class litigation, including discriminatory lending class litigation.

**F.      Proposed Interim Counsel Will Commit the Resources Necessary to Completely Litigate this Matter.**

Proposed Interim Class Counsel plan to litigate this matter vigorously and efficiently.  They understand the scope of this matter.  They have already committed significant resources to this case, and they are prepared to continue doing so up to and including trial and (if needed)  appeal.

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative class. Fed. R. Civ. P. 23(g)(1)(C).  Here, Proposed Interim Counsel can, as needed, draw on the skills and talents of experienced attorneys and staff members located in offices across the United States.

For example, and as detailed above, DiCello Levitt has more than 80 lawyers in six offices across the United States (including in the District of Columbia)—along with affiliated counsel in in the United Kingdom, the European Union, and Brazil—all dedicated to pursuing complex issues and trial work on behalf of plaintiffs.  DiCello Levitt attorneys have achieved victories in 92% of the matters they have taken through arbitration or trial, and hail from a wide range of backgrounds

that they leverage in support of their clients, including federal and state clerkships, practice at top-tier international law firms, and government.  *See* Levitt Decl. Ex. 1 (DiCello Levitt Firm Resume).

Likewise, Tycko & Zavareei LLP has 24 lawyers and ample support staff spread across three offices, with its home base in the District of Columbia. The firm's lawyers bring experience and knowledge obtained through serving in federal and state clerkships and practicing at top-tier international law firms, completing highly selective public interest fellowships, and representing the United States of America through the Department of Justice.  *See* Zavareei Declaration, Ex. A.

Each attorney understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class members. In fact, Proposed Interim Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to this litigation.  They have spent hundreds of hours developing these actions, including working intensively with potential consultants and retained experts.  And, as their declarations indicate, they are well-suited to and committed to aggressively prosecuting this matter.

## G.    Additional Considerations Also Favor Appointment of Proposed Interim Class Counsel.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court.  *See* MANUAL FOR COMPLEX LITIGATION § 10.23 (4th ed. 2004).  Selecting lawyers who have previously worked together, as is the case with the group of attorneys and firms proposed here, has a number of benefits.  They have developed working relationships, know of complimentary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time."  *Id.*  Here, each member of the Proposed

Interim Class Counsel has worked with others in the group, often on multiple occasions.[17]  While Proposed Interim Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication.  Proposed Interim Counsel have already begun formulating a plan for the most effective use its members' diverse skills and unique experiences for efficiently prosecuting and managing this litigation, while avoiding duplicative billing.

Additionally, the Proposed Interim Class Counsel group is demographically diverse and made up of lawyers from a variety of backgrounds and experience levels, reflecting the diversity of the bar and the putative class.  As set forth in the *Duke Guidelines* (Best Practice 3C), a leadership slate should "responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds."  Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 38 (2d ed. 2018).[18]  The Proposed Interim Class Counsel group represents a wide range of backgrounds, perspectives, and life experiences.  Moreover, they range in overall experience—some have been practicing for many decades, and others only a few years—and each brings unique experience, varied backgrounds, and on-point substantive knowledge to the table.  Just as important, they bring the diversity within their respective law firms, each of which is committed to dedicating the resources necessary to see these cases through to their conclusions.

---

[17] Proposed Interim Counsel have not made any agreements with each other or with other counsel in this case with respect to funding, cost-sharing, pooling clients, fees or any other matter. Proposed Interim Counsel understand that they will be required to make contributions to fund the litigation and they are prepared to do so.

[18] *See also* David Rock and Heidi Grant, *Why Diverse Teams are Smarter*, Harv. Bus. Rev. (Nov. 4, 2016), available at https://hbr.org/2016/11/why-diverse-teams-are-smarter.

Moreover, the attorneys on the Proposed Interim Class Counsel group "command the respect of their colleagues and work cooperatively with opposing counsel and the court," *Baker*, 2016 WL 4028974, at *4 (citing MANUAL FOR COMPLEX LITIGATION § 10.224), which is evidenced by their ability to self-organize to create the proposed leadership structure, their frequent invitations to represent the bar at events nationwide and their successes on behalf of their clients with numerous co-counsel.

## **CONCLUSION**

For all of the foregoing reasons, movants respectfully request that the Court consolidate the *Oliver* and *Hicks* Actions and appoint Adam J. Levitt, Ben Crump, and Hassan Zavareei as Interim Class Counsel.

Dated:  December 29, 2023

        /s/ John P. Pierce
        John P. Pierce
        **LILES PARKER PLLC**
        2305 Calvert Street, NW
        Washington, DC 20008
        Telephone: 202-567-2050
        jpierce@lilesparker.com

        Adam J. Levitt
        Daniel R. Schwartz
        **DICELLO LEVITT LLP**
        Ten North Dearborn Street, Sixth Floor
        Chicago, Illinois 60602
        Telephone: 312-214-7900
        alevitt@dicellolevitt.com
        dschwartz@dicellolevitt.com

        Diandra Debrosse Zimmermann
        Eli Hare
        **DICELLO LEVITT LLP**
        505 20th Street North, 15th Floor

Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com
ehare@dicellolevitt.com

Éviealle Dawkins
**DICELLO LEVITT LLP**
1101 17th Street NW, Suite 1000
Washington, DC 20036
Telephone: 202-975-2288
edawkins@dicellolevitt.com

Ben Crump
Sue-Ann Robinson
Chris O'Neal
Natalie Jackson
Nabeha Shaer
Desiree Austin-Holliday*
**BEN CRUMP LAW PLLC**
122 South Calhoun Street
Tallahassee, Florida 32301
Telephone: 850-224-2020
ben@bencrump.com
sueann@bencrump.com
chris@bencrump.com
natalie@bencrump.com
nabeha@bencrump.com
desiree@bencrump.com

*Counsel for Plaintiffs Oliver and Jacob and the Putative Classes*

 /s/ Peter Silva
Peter Silva (State Bar No. 80935)
Glenn Chappell (State Bar No. 92153)
Hassan Zavareei (*pro hac vice* to be filed)
Andrea Gold (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
psilva@tzlegal.com
gchappell@tzlegal.com
hzavareei@tzlegal.com
agold@tzlegal.com

Wesley M. Griffith (*pro hac vice* to be filed)
Cort Carlson (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
wgriffith@tzlegal.com
carlson@tzlegal.com

*Counsel for Plaintiffs Hicks and Hopper and
the Putative Classes*