IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LAQUITA OLIVER, et al.,                    )
                                           )
            Plaintiffs,                    )
                                           )
    v.                                     )        1:23-cv-1731 (LMB/WEF)
                                           )
NAVY FEDERAL CREDIT UNION,                 )
                                           )
            Defendants.                    )

MEMORANDUM OPINION

This proposed consolidated class action involves allegations that defendant Navy Federal

Credit Union ("defendant" or "Navy Federal") "systematically discriminates against African

Americans, Latinos, Native Americans, and other racial minorities by denying mortgage

applications that would have been approved for similarly situated [w]hite Americans."  [Dkt. No.

56] ("Consolidated Class Action Complaint," hereinafter "Complaint" or "Compl.") at ¶ 1.  The

Complaint alleges that Navy Federal's mortgage underwriting policies have had a disparate

impact on minority loan applicants and that Navy Federal's refusal to correct those discrepancies

constitutes intentional discrimination.  Based on these allegations, nine plaintiffs—who are

proceeding on behalf of themselves and a putative class of others similarly situated—bring

claims under federal and state civil rights laws.

Before the Court is Navy Federal's Motion to Dismiss the Consolidated Class Action

Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can

be granted.  [Dkt. No. 69] ("Motion to Dismiss").  Oral argument has been held, and for the

reasons that follow, the Court will grant in part and deny in part defendant's Motion to Dismiss

and strike the proposed class.

## I. BACKGROUND

Plaintiffs Bob Otondi, Dennis Walker, Charles Gardner, Marie Pereda, Laquita Oliver, John Jackson, Carl Carr, Constantina Batchelor, and Christina Hill (collectively, "plaintiffs") bring this civil action individually and on behalf of other members of a putative class of similarly-situated applicants who applied for original residential purchase mortgages, refinancings, and home equity lines of credit, and were either denied financing or offered financing at less favorable terms than they initially sought.

According to the Complaint, defendant Navy Federal is a member-owned, not-for-profit credit union that provides financial services to members of the military, veterans, and their families. [Dkt. No. 56] ("Compl.") at ¶¶ 6, 32. It is the largest credit union in the United States, with more than 13 million members, and it has a mortgage lending portfolio valued at over $84 billion. Compl. at ¶¶ 5-6, 65. In 2022, Navy Federal closed nearly 50,000 mortgage loans worth $16.5 billion. Compl. at ¶ 65.

Like all mortgage lenders, Navy Federal is required to submit data to the Consumer Financial Protection Bureau under the Home Mortgage Disclosure Act ("HMDA"). Compl. at ¶ 69. In turn, some of the HMDA data, in an anonymized form, is released annually to the public; other aspects of the data are kept confidential, available only to federal regulators. Compl. at ¶ 78. For example, the published HMDA data accessible to the public does not include applicants' credit scores and precise debt-to-income ("DTI") ratios. See Home Mortgage Disclosure (Regulation C), 80 Fed. Reg. 66128, 66134 (Oct. 28, 2015).

In support of their claim that Navy Federal discriminates against minority loan applicants, plaintiffs rely on three independent reports analyzing Navy Federal's publicly-available HMDA data. In August 2021, The Markup—an investigative journalism

2

organization—analyzed the public 2019 HMDA data and identified financial institutions which had significant racial disparities in mortgage lending.  Navy Federal was identified as one such lender.  Compl. at ¶ 73.  The Markup analysis, which controlled for seventeen independent variables in the publicly-available HMDA data, found that Navy Federal was more than twice as likely to deny Black applicants who applied for mortgages as compared to similarly situated white applicants.  Compl. at ¶ 73.

In November 2022, the National Credit Union Administration ("NCUA")—a credit union regulator—published research using publicly-available 2020 and 2021 HMDA data to assess racial and ethnic disparities in mortgage lending by credit unions.  Compl. at ¶ 70.  That research "control[led] for credit risk characteristics," and found that—even after taking credit scores into consideration—credit unions denied mortgages to minority applicants at rates up to 1.9 times higher than similarly qualified white applicants.  Compl. at ¶ 71.

On December 14, 2023, CNN released a statistical analysis of Navy Federal's publicly-available 2022 HMDA data.  Compl. at ¶¶ 2-4, 74-81.  Controlling for more than a dozen variables, Black applicants were found to be more than twice as likely to be denied a loan by Navy Federal compared to equally qualified white applicants.  Compl. at ¶¶ 4, 74.  Equally qualified Latino applicants were approximately 85% more likely to be denied than similarly situated white applicants.  Compl. at ¶¶ 4, 74.  Navy Federal offered loans to only 48% of Black applicants, and only 56% of Latino applicants, but approved 77% of white applicants.  Compl. at ¶¶ 2, 76.  In 2022, Navy Federal was more likely to issue a mortgage to a white applicant earning

less than $62,000 per year than a Black applicant making more than $140,000 per year.  Compl.

at ¶¶ 3, 77.[1]

      With these statistical analyses in the public domain, the Complaint alleges that Navy

Federal has engaged in racial discrimination by denying plaintiffs' loan applications or offering

plaintiffs a loan product on less favorable terms.  The following tables, which were compiled by

defendant in its Motion to Dismiss, accurately summarize the Complaint's allegations regarding

plaintiffs' applications:

|  | Bob Otondi | Dennis Walker | Constantina Batchelor | John Jackson | Laquita Oliver |
|---|---|---|---|---|---|
| **Race** | African American | African American | African American | African American | African American |
| **Loan Product** | First mortgage | VA cash-out refinance | First mortgage | First mortgage | First Mortgage |
| **Income** | $100,000 | "exceeding $100,000" | "more than $140,000" | Not alleged | "over $95,000" |
| **Credit Score** | "above 700" | "above 620" | "above 700" | "above 700" | "above 650" |
| **Debt** | "minimal" | Not alleged | Not alleged | "minimal" | Not alleged |

|  | Charles Gardner | Carl Carr | Marie Pereda | Christina Hill |
|---|---|---|---|---|
| **Race** | African American | African American | African American | Hispanic / Latina |
| **Loan Product** | First mortgage | VA first mortgage | First mortgage; refinance | First mortgage |
| **Income** | $92,000 | More than $130,000 with spouse | "several hundred thousand dollars per year" | $80,000 |
| **Credit Score** | "approximately 800" | "above 620" | "above 650" | Not alleged |
| **Debt** | Not alleged | "minimal outstanding debt obligations consisting of minimal credit card debt and a car loan" | "minimal debt, aside from existing mortgage loan" | "minimal debt obligations," including car loan and $10,000 in credit card debt |

---

[1] The CNN article states that it did not account for credit scores "because the public data released under the [HMDA] does not include credit scores due to privacy concerns."  [Dkt. No. 69] Ex. 1. CNN also acknowledged that any potential disparity "could possibly be explained by differences in credit scores between [w]hite and minority borrowers," which are a result of "historical discrimination and a continuing lack of access to traditional financial institutions . . . ."  [Dkt. No. 69] Ex. 1.

As these tables show, each named plaintiff applied to Navy Federal for at least one home loan product, although different plaintiffs applied for different products. For example, some plaintiffs applied for a first-lien mortgage, while others applied for a Veterans Administration backed loan, and yet others applied to refinance an existing loan. All but plaintiff Batchelor allege that their loan applications were denied; Batchelor alleges she was approved at a higher interest rate. The Complaint does not allege the amount of the mortgage sought or the value of the home for which the plaintiffs sought the mortgage (the "loan-to-value ratio" or "LTV"). Plaintiff Otondi provides the available down payment, "more than 20 percent of the sales price of the home," Compl. at ¶ 112, and plaintiff Batchelor alleges the interest rate she sought and the rate ultimately offered. Plaintiff Jackson does not provide his income, and plaintiff Hill does not provide any indication of her credit score. Lastly, six plaintiffs allege they received loans at higher interest rates from other lenders following Navy Federal's denials, and no plaintiff provides the reasons given by Navy Federal as the basis for the denial.

Plaintiff Oliver initiated this civil action in December 2023, and two additional class complaints followed. [Dkt. Nos. 1, 33, & 43]. Plaintiffs then filed the instant Complaint on February 20, 2024, which consolidated the three actions, removed five original plaintiffs, and added eight new ones. [Dkt. No. 56]. The Complaint alleges in seven counts that plaintiffs have been the victims of disparate treatment and disparate impact under both federal and state civil rights laws. Specifically, plaintiffs invoke the Fair Housing Act, 42 U.S.C. §§ 3601, et seq. ("FHA") (Count I), the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, et seq. ("ECOA") (Count II), and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count III), and seek a declaratory judgment under 28 U.S.C. § 2201 (Count IV). Compl. at ¶¶ 241, 255-287. Additionally, plaintiffs Pereda and Hill, who live in California, have brought claims under

California's Unruh Civil Rights Act, Cal. Civ. Code § 51 ("Unruh Act") (Count V), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") (Count VI), on behalf of themselves and a putative California subclass. Compl. at ¶¶ 288-305. Plaintiffs Walker, Jackson, Oliver, and Gardner, who reside in Florida, have brought claims for disparate impact and intentional discrimination under Florida statute Section 725.07 ("Section 725.07") on behalf of themselves and a putative Florida subclass (Count VII). Compl. at ¶¶ 306-312. Plaintiffs seek restitution; compensatory, statutory, and punitive damages; an injunction; and attorneys' fees and costs. Compl. at 63, Prayer for Relief ¶¶ A-G. On March 21, 2024, defendant filed the pending Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [Dkt. No. 68].

## II. DISCUSSION

### A. **Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a claim if the "plaintiff's allegations fail to state a claim upon which relief can be granted." Abdelhamid v. Sec'y of the Navy, 525 F. Supp. 3d 671, 681 (E.D. Va. 2021) (quoting Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)). To survive a Rule 12(b)(6) motion, a complaint's factual allegations must be more than speculative and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a court must accept all well-pleaded allegations as true and view a complaint in the light most favorable to the plaintiff, it need not accept "unwarranted inferences, unreasonable conclusions, or arguments." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (internal citation omitted).

6

**B. Disparate Treatment Claims under the FHA, ECOA, Section 1981, and state law**

Under the FHA and the ECOA, two potential theories of discrimination exist: disparate treatment and disparate impact.  See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc., 576 U.S. 519, 524 (2015) (FHA); Carroll v. Walden Univ., LLC, 650 F. Supp. 3d 342, 360 (D. Md. 2022) (ECOA).  A disparate treatment claim requires alleging that a defendant's actions were "motivated by a racially discriminatory purpose," i.e., intentional discrimination, whereas a disparate impact claim requires alleging that a defendant's actions "have a disproportionate adverse effect on minorities."  Betsey v. Turtle Creek Assocs., 736 F.2d 983, 986 (4th Cir. 1984).[2]

To state a disparate treatment claim, the allegations in the Complaint (1) "must establish [through direct or circumstantial evidence] that the defendant had a discriminatory intent or motive," or (2) the facts alleged must be sufficient to support an inference of intent.  See Inclusive Cmtys. Project, 576 U.S. at 524 (quoting Ricci v. DeStefano, 557 U.S. 557, 577 (2009)).

1. Direct or Circumstantial Evidence of Discriminatory Intent or Motive

Plaintiffs rely on the statistics analyzed in three reports purporting to show a disparity in outcomes for minority loan applicants to demonstrate that Navy Federal was on notice of the discriminatory impact of its mortgage lending program and did not act to address the disparity, thus establishing direct or circumstantial evidence of an intent to discriminate.  [Dkt. No. 75] at

_____

[2] Disparate treatment is the only theory available under Section 1981, the California Unruh Civil Rights Act, and Florida Section 725.07.  The parties dispute whether the Florida statute Section 725.07 supports a theory of disparate impact, though they agree that a theory of disparate treatment is available under the state statute.  [Dkt. No. 69] at 12-13 & n.5 (citing cases); [Dkt. No. 75] at 16 & n.5.  The cases cited by plaintiffs assess only disparate treatment claims under Section 725.07, not disparate impact claims.  For this reason, the Court will not consider plaintiffs' Florida state-law claims under a disparate impact theory.

7

23 ("Navy Federal's refusal to improve its practices over the past five years supports a plausible 'common sense' inference that it has been deliberately indifferent to discrimination in its mortgage lending program."). Navy Federal responds that "statistical disparities are rarely sufficient to raise an inference of intentional discrimination." [Dkt. No. 69] at 15 (quoting Cnty. of Cook v. Bank of Am. Corp., 584 F. Supp. 3d 562, 572 (N.D. Ill. 2022), aff'd sub nom. Cnty. of Cook v. Bank of Am. Corp., 78 F.4th 970 (7th Cir. 2023)).

In support of plaintiffs' request to have the Court recognize a plausible allegation of discriminatory intent from the disparate outcomes detailed in the reports, plaintiffs cite to E.E.O.C. v. O&G Spring & Wire Forms Specialty Co., 38 F.3d 872 (7th Cir. 1994), for the proposition that "statistical disparities alone may prove intent," [Dkt. No. 75] at 24; however, in their opposition to the Motion to Dismiss, plaintiffs lift this sentence out of important context. The Seventh Circuit goes on to explain that "[r]eliance on statistical evidence by no means diminishes the plaintiff's obligation to prove discriminatory intent," and statistics may prove "probative" of discrimination, "absent explanation," and, "of course, statistics, like any evidence are not irrefutable . . . [and] shaky statistics may be insufficient unless accompanied by additional evidence." O&G Spring & Wire, 38 F.3d at 876 (cleaned up).

Moreover, several other cases cited by plaintiffs in their opposition present factual scenarios where statistical disparities are alleged alongside other facts demonstrating direct or circumstantial evidence of a discriminatory intent, such as being able to identify a specific non-minority applicant that received more favorable treatment. See, e.g., Smiley v. Ensystex II, Inc., 2022 WL 2057724, at *3-5 (E.D.N.C. June 7, 2022) (plaintiff named two white employees who were not terminated, despite workplace accidents, whereas plaintiff was terminated following a single accident, in addition to statistical anomalies); Woods v. City of Greensboro, 855 F.3d 639,

8

648-50 (4th Cir. 2017) (plaintiff "actually alleges particular examples of how the City has treated similarly situated white businesses differently").

Plaintiffs also fail to engage meaningfully with Navy Federal's argument that the data relied on by the reports lacked crucial metrics relating to credit scores and debt-to-income ratios. For that reason, reliance on those analyses alone—absent other allegations of direct or circumstantial evidence of discriminatory intent[3]—does not make out a plausible claim of intentional discrimination.

<u>2. Inference of Discriminatory Intent Based on the Facts Alleged</u>

Because the Court declines to find that the pleaded statistical evidence contained in the media reports constitutes a plausible allegation of direct or circumstantial evidence of intentional discrimination, plaintiffs may sustain their disparate treatment claim only if the Complaint's allegations support an inference of such intent from the broader facts and circumstances alleged. <u>See Coleman v. Md. Ct. App.</u>, 626 F.3d 187, 190 (4th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 679), <u>aff'd sub nom. Coleman v. Ct. App. Md.</u>, 566 U.S. 30 (2012) (explaining that a plaintiff must state a plausible claim for relief that permits the Court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense); <u>Woods v. City of Greensboro</u>, 855 F.3d 639, 649 (4th Cir. 2017) (explaining that a court may "infer

---

[3] Other direct or circumstantial evidence of discriminatory intent could be a plausible allegation that plaintiffs were treated differently from those with a similar credit stature in the loan application process; however, plaintiffs do not allege their own credit histories or DTI ratios, making them impossible to compare.

Plaintiffs also ask the Court to consider statements and hyperlinks on Navy Federal's website to infer discriminatory intent to minority applicants and non-English speakers, [Dkt. No. 75] at 25; however, such a suggestion does not rise to a common sense inference of discriminatory intent. Moreover, that website states that it "will attempt to assist members who have limited English proficiency where possible." [Dkt. No. 77] at 15 n.7.

discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant").

To sustain such an inference, the Complaint must plausibly allege that: (1) plaintiffs are members of a protected class; (2) they applied for and were qualified for loans; (3) their loan applications were rejected despite those qualifications; and (4) the defendant approved loan applications for applicants with similar qualifications who are not members of the protected class. See Wise v. Vilsack, 496 F. App'x 283, 285 (4th Cir. 2012); Corey v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Walker, 719 F.3d 322, 325 (4th Cir. 2013).[4]

Navy Federal argues that the Complaint provides no factual support demonstrating that plaintiffs were qualified for the mortgage loans for which they applied, or that they were treated differently than similarly-situated white applicants. Without alleging such facts, the Complaint fails to establish an inference of discriminatory intent sufficient to sustain a disparate treatment claim.

Under the federal and state statutes at issue in this litigation, the Complaint must allege "the requirements necessary for approval" and plaintiffs' "actual qualifications when [they] submitted each application." Glenn v. Wells Fargo Bank, N.A., 2016 WL 3570274, at *5 (D. Md. July 1, 2016) (citing Boardley v. Household Fin. Corp. III, 39 F. Supp. 3d 689, 711 (D. Md. 2014)). With respect to the loan applications plaintiffs submitted, Navy Federal argues that the

---

[4] Similarly, under Section 1981, a complaint must allege that: plaintiffs (1) are members of a protected class; (2) they sought to enter into a contractual relationship with the defendant; (3) they met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) they were denied the opportunity to contract for goods or services that was otherwise afforded to white customers. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004). Florida's Section 725.07 and California's Unruh Act require substantially similar elements to those needed for a Section 1981 claim.

Complaint fails to detail the "terms of the credit sought" or "the requirements necessary for approval." [Dkt. No. 69] at 17.  Moreover, plaintiffs applied for different types of mortgage products—including, first-lien mortgages, refinancings, and VA loans—each of which has a different credit requirement.  Yet the Complaint does not allege any meaningful differences among these products or among plaintiffs' applications.  For example, plaintiffs do not adequately detail their credit score, assets, loan value, property value, ratio of the total amount of debt secured by the property to the property value ("LTV"), or ratio of total monthly debt to total monthly income ("DTI") at the time they applied for any of Navy Federal's mortgage products.  As a result, the Complaint makes only conclusory claims about plaintiffs' qualifications for such products when they applied for them.  As defendant correctly explains:

> [N]one of the plaintiffs allege the LTV, and only one alleges the potential down payment.  Compl. at ¶ 112.  Although most of the plaintiffs (but not Jackson) allege a rough approximation of their incomes, that is only half of the DTI equation.  None of the plaintiffs allege facts sufficient to determine their debt compared to their income, which lenders use to assess an applicant's ability to repay the loan in relation to other existing debt obligations.  Several plaintiffs provide only conclusory allegations about having "minimal" debt.  See, e.g., Compl. at ¶¶ 111, 221.  And the Complaint does not provide any allegation whatsoever regarding the debt obligations for Walker, Batchelor, Oliver, or Gardner.

[Dkt. No. 69] at 17-18 (cleaned up); see also id. at 18 (discussing a lack of alleged credit history and credit scores sufficient to assess plaintiffs' qualifications based on a specific loan product).

Navy Federal argues that the absence of this information in the Complaint is particularly glaring because federal law requires that a lender provide a loan applicant with an explanation for the decision made on their applications.  See 15 U.S.C. § 1691(d).  Here, plaintiffs "should be aware of the credit factors that led to their denials," [Dkt. No. 69] at 18; however, the Complaint makes no mention of such information.  Further undermining plaintiffs' allegations, although six

of the nine plaintiffs attained loans elsewhere, each loan was obtained at a higher interest rate than the loan sought from Navy Federal. See [Dkt. No. 75] at 14 & n.2. To Navy Federal, this demonstrates that plaintiffs were in fact unqualified for the lower interest rate loans for which they applied, and no allegations in the Complaint plausibly claim otherwise.

Navy Federal also argues that the Complaint does not sufficiently allege that Navy Federal approved loans for similarly-situated white applicants. See Glenn, 2016 WL 3570274, at *6 ("Plaintiff [] fails to allege that Defendant gave preferential treatment to applicants outside of the protected class with qualifications similar to his."); Grant v. Vilsack, 2011 WL 308418, at *3 (E.D.N.C. Jan. 27, 2011) (granting motion to dismiss ECOA claim where plaintiff had failed to "plausibly demonstrat[e] the existence of a single non-minority who was (1) of similar credit stature as the plaintiff and (2) given more favorable financial or credit-related treatment than plaintiff"). Plaintiffs dispute that they are required to identify a specific similarly situated white applicant who was approved by Navy Federal because "imposing this false standard on plaintiffs would be particularly inappropriate pre-discovery, since Navy Federal continues to conceal as a trade secret details of its specific underwriting processes and procedures." [Dkt. No. 75] at 26 (cleaned up); see also [Dkt. No. 89] at 10:11-11:13 (taking the same position at oral argument).

The lack of a comparator is of no import here because, as discussed above, the Complaint does not adequately allege that plaintiffs' credit profiles met Navy Federal's loan requirements when they applied for Navy Federal's products, such that any comparison would be lacking relevant datapoints.[5] Although the Court will not reach the issue whether such a comparator is

---

[5] Plaintiff Batchelor alleges that Navy Federal approved her mortgage loan application at an interest rate "1% higher than the average prevailing rate," but she does not allege that similarly-situated white borrowers with comparable loan profiles were approved at different interest rates. See Compl. at ¶ 143. Rather, Batchelor points to the national average of prevailing rates across

required, Navy Federal's argument is persuasive given the Fourth Circuit's language in Wise v. Vilsack, which required a plaintiff to proffer "plausible substantive allegations" that "non-minority applicants of similar credit stature were extended credit or were otherwise given more favorable treatment than plaintiffs." 496 F. App'x 283, 285 (4th Cir. 2012). Without plausibly claiming that plaintiffs were qualified at the time of application, the Complaint fails to allege sufficient facts to sustain an intentional discrimination claim through inference.

Because the Complaint has failed to allege plausible direct or circumstantial evidence of discriminatory intent, and has failed to allege facts showing that plaintiffs were qualified for the mortgage products they sought, the disparate treatment claims under the FHA (Count I), the ECOA (Count II), Section 1981 (Count III), the California Unruh Civil Rights Act (Count V), and Florida Section 725.07 (Count VII) will be dismissed.

### C.  Disparate Impact Claims under the FHA and ECOA

To sustain a disparate impact claim at the motion to dismiss stage, the Complaint must allege (1) a disparate impact on the protected class; (2) a specific policy of the defendant; and (3) a causal connection between the policy and the disparate impact. Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 424-25 (4th Cir. 2018). Substantial statistical anomalies allegedly caused by a defendant's actions may make the "disparate impact of the policy self-evident, . . . ." Id. at 428. Nevertheless, the Supreme Court has emphasized that "one safeguard to ensure that disparate-impact claims [are] properly limited" is "the plaintiff's need to demonstrate a robust causality requirement . . . in order to state a prima facie disparate-impact claim." Id. at 425 (cleaned up). "A robust causality requirement ensures that '[r]acial imbalance

---

all lending institutions, without identifying the lender, the type of loan sought, value of the home, or the credit profile of a similarly situated white borrower. [Dkt. No. 69] at 19.

. . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." Id. (alterations in original) (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 653 (1989)).

Navy Federal argues that the Complaint fails to identify any policy or practice that caused a racial disparity among their loan applicants, such that plaintiffs have failed to satisfy the "robust causality" requirement between a Navy Federal policy and subsequent disparities. [Dkt. No. 69] at 20; see Glenn, 2016 WL 3570274, at *6 (requiring plaintiff to plausibly allege a specific policy that caused a "significant disparate impact effect on a protected class"). Plaintiffs respond by citing to sections in the Complaint that take aim at Navy Federal's "unique—and secret—process for underwriting home mortgage loans that produces disparate outcomes." [Dkt. No. 75] at 16 (citing Compl. at ¶¶ 63-68).

Navy Federal contends that no such policy or practice is identified by plaintiffs, and "any alleged policy or practice that applied to all named plaintiffs would be implausible given that plaintiffs applied for different products with presumably different underwriting requirements." [Dkt. No. 69] at 21 (cleaned up) (citing Compl. at ¶ 114 (home loan), ¶ 195 (VA loan), ¶ 124 (VA refinance), ¶ 229 (cash-out refinance)). As a result, Navy Federal argues that the Complaint has not sufficiently alleged a causal connection linking its decisions to the statistical disparity. "To hold otherwise would result in lenders being potentially liable for the myriad of innocent causes that may lead to statistical imbalances, such as differences in qualified applicants." [Dkt. No. 69] at 21 (cleaned up).

Plaintiffs respond by asserting that, at the pleading stage, the Complaint alleges sufficient known facts to identify a Navy Federal policy or practice that results in discrimination, specifically: (1) Navy Federal has a "semi-automated" underwriting process; (2) that

14

underwriting process utilizes a propriety algorithm that considers a host of variables that can be proxies for race; (3) the outputs from the algorithm are used by Navy Federal to make decisions regarding borrowing eligibility and credit terms; (4) the underwriting process is substantially the same for the loan types sought by each of the named plaintiffs and members of the putative classes; and (5) the underwriting process is responsible for the disparate impact experienced by plaintiffs and the putative classes. Compl. at ¶¶ 63-67, 89.

With respect to causation, the Complaint further alleges that Navy Federal's proprietary underwriting processes and practices are the proximate cause for the harmful disparate impact because such practices determine whether Navy Federal will approve or deny a borrower, including on what terms, and the underwriting algorithm uses variables that can be proxies for race that uniquely harm minority applicants. Compl. at ¶¶ 63-68, 83. The Complaint also alleges that plaintiffs Otondi, Walker, Jackson, Gardner, Carr, and Pereda each received loans by other lenders after Navy Federal's use of the underwriting algorithm and process to deny their applications. Compl. at ¶¶ 117, 131, 162, 187, 205, 218.

Navy Federal again forcefully argues that an allegation of an unknown policy or practice is irrelevant because each of the nine named plaintiffs is alleged to have completed a mortgage application with Navy Federal but chose not to allege specific circumstances regarding their own application process and the reasons provided for their denials. With respect to causation, Navy Federal points to the limitations of the reports and analyses to undermine plaintiffs' argument that the underwriting processed resulted in a statistically significant impact on the named plaintiffs' applications. For example, CNN itself recognized that any disparity "could possibly be explained by differences in credit scores between [w]hite and minority borrowers." [Dkt. No. 69] Ex. 1. The Markup likewise recognized that public data does not include credit scores.

Finally, the NCUA Research Note does not speak to Navy Federal's practices given that it analyzes the credit union industry as a whole.  The NCUA Research Note also recognizes that HMDA data does not include important credit-risk-related factors, such as an applicant's work history and bankruptcy history.

At the motion to dismiss stage, the Complaint has sufficiently pled a claim for disparate impact under the FHA and ECOA because it meets the requirements to state a claim: the statistical disparities reveal a disparate impact among non-white loan applicants and the underwriting algorithm and process is alleged to have caused the disparity.  If during discovery plaintiffs are unable to link the described "secret" underwriting process to the precise disparities and adverse consequences experienced by the borrowers—taking into consideration their individualized application criteria—then the Court may revisit whether the claim can survive at summary judgment.

### D. California Unfair Competition Law Claim

Plaintiffs Pereda and Hill, on behalf of themselves and a putative California subclass, have brought a claim under the California Unfair Competition Law ("UCL").  Compl. at ¶¶ 296-305 (Count VI).  Navy Federal asks the Court to dismiss plaintiffs' UCL claim for three reasons: (1) California law does not apply because of choice-of-law clauses in the Navy Federal Membership Agreement; (2) plaintiffs failed to plead facts supporting their claim; and (3) they may not pursue a restitution claim when there is an otherwise adequate remedy at law.  The Court need only address Navy Federal's first argument because it is correct that the choice-of-law clause in the parties' agreement proscribes application of California law to claims arising out of plaintiffs' membership in Navy Federal Credit Union.

Plaintiffs' Membership Agreement includes the following provision:

> Navy Federal members' funds and checking, savings, and all other accounts are located in the Commonwealth of Virginia, and are maintained and governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended.

[Dkt. No. 69] at Ex. 2.[6]

A federal court with jurisdiction over a state law claim under 28 U.S.C. § 1332(d) applies the choice-of-law rules of the state in which it sits, see In re Facebook Biometric Info. Priv. Litig., 185 F. Supp. 3d 1155, 1168-69 (N.D. Cal. 2016), meaning that Virginia choice-of-law rules apply. "Virginia law looks favorably upon choice-of-law clauses in a contract, giving them full effect except in unusual circumstances." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999).

Navy Federal submits that plaintiffs' UCL claim should be dismissed because Virginia law governs "the relationship between Navy Federal and all [] plaintiffs." [Dkt. No. 69] at 23. In support of this position, Navy Federal cites to Run Them Sweet, LLC v. CPA Glob. Ltd., 224 F. Supp. 3d 462, 466 (E.D. Va. 2016) (Ellis, J.) (concluding that a Virginia choice-of-law clause precluded a California UCL claim) and Lambert v. Navy Fed. Credit Union, 2019 WL 3843064, at *5-6 (E.D. Va. Aug. 14, 2019) (O'Grady, J.) (concluding that a similar Navy Federal choice-of-law clause is "sufficiently broad" and precluded a claim under the North Carolina Unfair and Deceptive Trade Practices Act).

Plaintiffs respond that, by its plain terms, the Virginia choice-of-law clause applies only to the maintenance and governance of "members' funds and checking, savings, and all other

---

[6] The Court may consider "loan applications, promissory notes, loan agreements, and the deed of trust" on a motion to dismiss when "the plaintiff has notice of the evidence, does not dispute its authenticity, and relies on it in framing the complaint." Porter v. GreenPoint Mortg. Funding, Inc., 2011 WL 6837703, at *1 n.1 (D. Md. Dec. 28, 2011).

accounts," thus, by definition, plaintiffs and putative class members who were denied mortgage loans do not have mortgage accounts with Navy Federal. [Dkt. No. 75] at 31. In the alternative, plaintiffs argue that the choice-of-law clause is invalid because it is part of an unreasonable and unfair contract of adhesion that would invalidate otherwise meritorious claims.

In reply, Navy Federal contends that plaintiffs' interpretation of the choice-of-law provision is overly narrow because the Membership Agreement provides the terms of membership in the credit union, including members' "ongoing responsibilities" and access to "all products and services." [Dkt. No. 77] at 19. For example, the Membership Agreement provides that if a member is delinquent on a loan, Navy Federal may deny a subsequent application for credit. As such, plaintiffs' access to the mortgage loans for which they applied turns on the language in the Membership Agreement.

With respect to the scope of the choice-of-law provision, Navy Federal has the better argument. As Judge Ellis explained in Run Them Sweet, analysis of a choice-of-law provision focuses on the intent of the parties based on the language they used. 224 F. Supp. 3d at 466. Here, the terms of the choice-of-law provision make clear that the parties intended that provision to apply broadly to the scope of a person's membership in the credit union. Id. (explaining that the use of "governed" in a choice-of-law provision demonstrates parties' intent for broad applicability and a relationship of "absolute direction, control, and restraint"). Moreover, plaintiffs' California UCL claim clearly challenges their access to a mortgage "account," which they are eligible to access solely by reason of their membership in the credit union, and membership is governed by the Membership Agreement. Accordingly, because the choice-of-law provision clearly applies to a member's application for a loan, the California UCL claim

18

(Count VI) is barred by the Virginia choice-of-law provision in the Navy Federal Membership

Agreement, and will therefore be dismissed.

### E. **Notice of Claims Provision**

Navy Federal argues that all of plaintiffs' claims are precluded by the notice of claims

provision in the Membership Agreement, which provides in relevant part:

> Neither Member nor Navy Federal may commence, join, or be
> joined to any judicial action (as either an individual litigant or the
> member of a class) that arises from the other party's actions pursuant
> to this agreement or that alleges that the other party has breached
> any provision of, or any duty owed by reason of, this agreement,
> until such party has notified the other party of such alleged breach
> and afforded the other party a reasonable period after the giving of
> such notice to take corrective action.

[Dkt. No. 69] Ex. 2.

Navy Federal maintains that plaintiffs were required under the Membership Agreement to

provide notice and a reasonable period to take corrective action or resolve the grievance before

filing a judicial action. As alleged in the Complaint, only plaintiff Carr attempted to do so. See

Compl. at ¶ 203 (alleging that Carr "wrote to Navy Federal in January 2022 saying he thought he

had been discriminated against by them based on his race"). Navy Federal does not oppose Carr

proceeding as an individual, but argues that the other plaintiffs who failed to abide by the notice

provision should be dismissed. [Dkt. No. 69] at 27. See King v. Navy Fed. Credit Union, 2023

WL 8250482, at *3 (C.D. Cal. Oct. 19, 2023) (applying the same Navy Federal notice of claim

provision to breach-of-contract and UCL claims).[7]

---

[7] One day after the Complaint was filed, plaintiffs emailed counsel for Navy Federal a letter
purporting to provide notice that the plaintiffs intended to bring claims against Navy Federal.
Navy Federal contends that such notice does not meet the requirements of plaintiffs' agreements.
[Dkt. No. 69] at 27 n.10 (citing Kim v. Shellpoint Partners, LLC, 2016 WL 1241541, at *6 (S.D.
Cal. Mar. 30, 2016) (rejecting plaintiff's argument that post-suit notice substantially complied

Plaintiffs respond by calling the notice of claims provision a "technicality," [Dkt. No. 75] at 33, which is inapplicable for three reasons. First, the terms of the Membership Agreement's notice of claim provision contemplates "any judicial action . . . that arises from the other party's actions pursuant to this agreement or that alleges that the other party has breached any provision of, or any duty owed by reason of, this agreement." [Dkt. No. 69] Ex. 2. Plaintiffs contend that their claims arise from violations of federal and state statutes, not from Navy Federal's actions pursuant to the Membership Agreement. See Richards v. NewRez LLC, 2021 WL 1060286, at *21 (D. Md. Mar. 18, 2021) (explaining that some courts have held that "claims that exist independent of a contractual agreement between the parties, such as allegations of deceptive trade practices, are not subject to the notice and cure provisions that might otherwise apply"). But see Johnson v. Countrywide Home Loans, Inc., 2010 WL 5138392, at *2 (E.D.V.A. Dec. 10, 2010) (Cacheris, J.) (granting motion to dismiss federal statutory claim pursuant to a notice and cure provision because "all of [p]laintiff's allegations [arose] from actions taken pursuant to the Deed of Trust").

Second, plaintiffs argue that Navy Federal had actual and constructive notice of their claims, mostly prominently because of the December 14, 2023 CNN article detailing the "systemic issues with Navy Federal's mortgage lending program," including mention of plaintiff Otondi. [Dkt. No. 75] at 35. On December 18, 2023, Navy Federal responded in a press release to the CNN article, but did not reach out to Otondi. Plaintiffs also claim that the previous two media reports put Navy Federal on notice. Plaintiffs also cite to a formal demand letter from counsel that was sent to Navy Federal on February 21, 2024, after the Complaint was filed,

---

with notice provision, "the purpose of which is to give each party an opportunity to cure problems and prevent the need for litigation").

"seeking redress of precisely the same claims that are raised in this action." Id. at 35-36. Navy Federal acknowledged receipt of the letter.

Lastly, plaintiffs argue that additional notice to Navy Federal would have been futile.

Navy Federal responds that notice of claim provisions have been applied to statutory claims, independent of a breach of contract claims, see Johnson, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (Truth-in-Lending Act, Real Estate Settlement Procedure Act, Fair Debt Collection Practices Act, Fair Credit Reporting Act); and that post-lawsuit notice does not suffice because it does not provide Navy Federal with an opportunity to address concerns before the commencement of expensive litigation; and that such notice would not have been futile because Navy Federal may have been able to explain in greater detail the individualized, non-discriminatory credit factors that resulting in a mortgage application being denied. [Dkt. No. 77] at 22.

While the issue is close, the Court is persuaded that additional notice to Navy Federal regarding plaintiffs' claims of discrimination would have been futile. This is supported by the allegation in the Complaint that plaintiff Carr wrote to Navy Federal in January 2022 saying that he believed he had been discriminated against based on his race by Navy Federal when it denied his loan application. Compl. at ¶ 203. In response, Navy Federal said there was no "evidence of discrimination on file" and did not provide further assistance. At the pleading stage, such an allegation is sufficient to conclude that any additional notice by the named plaintiffs would not have meaningfully addressed their core contentions, namely, that the process by which Navy Federal reviews loan applications discriminates—either intentionally or unintentionally—against racial minorities.

**F.** **Class Limitation**

Finally, Navy Federal requests that the Court strike or limit the class definitions proposed

by plaintiffs. [Dkt. No. 69] at 28. Plaintiffs oppose this request.

A "court may strike from a pleading" class allegations "on motion made by a party" or

"require that the pleadings be amended to eliminate" the class allegations. Fed. R. Civ. P.

12(f)(2) and 23(d)(1)(D). Plaintiffs identify three nationwide classes:

> All minority residential loan applicants from 2018 through the
> present (the "Class Period") who submitted an application for any
> home mortgage loan to Defendant, who sought to refinance or
> modify a home mortgage loan through Defendant, and/or who
> sought a Home Equity Line of Credit from Defendant and whose
> application was:
>
> > (a) denied;
> > (b) approved at higher interest rates and/or subject to less
> > favorable terms as compared to similarly situated non-
> > minority applicants; or
> > (c) processed at a rate slower than the average processing
> > time of applicants submitted by similarly situated non-
> > minority applicants.

See Compl. at ¶ 241. The Complaint also identifies a subclass for Florida residents, Compl. at

¶ 242, and one for California residents, Compl. at ¶ 243.

Because the circumstances of each plaintiff's loan application process are so varied, and

to promote the efficient use of resources and to streamline the claims to be considered in this

civil action, the Court will strike the class allegation and allow the nine plaintiffs to proceed on

their federal ECOA and FHA disparate impact claims under Case No. 1:23-cv-1731

(LMB/WEF) or permit them to proceed individually.

22

## III. CONCLUSION

For these reasons, Navy Federal's Motion to Dismiss will be granted in part, which means that the disparate treatment theory contained in Counts I and II and the entirety of Counts III, V, VI, and VII will be dismissed, and the Motion to Dismiss will be denied in part, which means that the disparate impact theory contained in Counts I and II will proceed.  [Dkt. No. 68]. Plaintiffs' claim for declaratory relief under 28 U.S.C. § 2201 (Count IV) will also go forward. Moreover, the proposed class will be stricken pursuant to Fed. R. Civ. P. 23(d)(1)(D), and the nine plaintiffs will be permitted to proceed in this civil action under Case No. 1:23-cv-1731 (LMB/WEF), or they may elect to proceed individually in separate civil actions.  Lastly, plaintiffs will be ordered to file an amended complaint that conforms with the reasoning in this Memorandum Opinion.

Entered this _30_ day of May, 2024.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

23