# EXHIBIT A

**No.**

*In the*
United States Court of Appeals
*for the*
Fourth Circuit

_____

LAQUITA OLIVER, *et al.* v. NAVY FEDERAL CREDIT UNION

_____

**PLAINTIFFS' PETITION FOR PERMISSION TO APPEAL UNDER RULE
23(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

*From the Order Striking Class Allegations
Entered May 30, 2024, by the
United States District Court for the Eastern District of Virginia,
Civil Action No. 23-cv-1731*

Hassan Zavareei
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Tel. 202.973.0900
hzavareei@tzlegal.com

Adam J. Levitt
**DiCELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
alevitt@dicellolevitt.com

Ben Crump
**BEN CRUMP LAW PLLC**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel. 850-224-2020
ben@bencrump.com

*Interim Co-Lead Class Counsel for Plaintiffs and the Proposed Class*

*(Additional counsel listed on signature page)*

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellants certify that they are all natural persons.

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

PRELIMINARY STATEMENT ........................................................................ 1

RELIEF SOUGHT ......................................................................................... 4

QUESTION PRESENTED ............................................................................... 4

STATEMENT OF FACTS ............................................................................... 4

I.     Navy Federal's Own Data Reveal Significant Racial Disparities in Mortgage Lending. ................................................................................. 4

II.    Plaintiffs File Suit to End Navy Federal's Discriminatory Practices. ............. 5

III.   Navy Federal Moves to Dismiss the CAC and Strike the Class Claims. ........ 6

IV.   The Court Allowed Individual Claims to Proceed and Struck—Without Explanation, Analysis, or Legal Support—the Class Claims Based on the Same Underlying Data. ................................................................... 7

REASONS FOR GRANTING THE PETITION .................................................. 8

I.     Legal Standard. .................................................................................... 8

II.    The Order Contains Clear Errors, Rendering It "Substantially Weak" (Factor 1). ........................................................................................... 9

      A.    The District Court's Decision Violates Rule 12. ............................... 10

      B.    The Order Is Otherwise Legally Unsupportable. ............................... 11

            1.    The Order is internally inconsistent. ......................................... 11

            2.    The existence of multiple variables is no barrier to class certification. ............................................................................ 14

III.   The District Court's Decision Is Likely Dispositive (Factor 2). ................... 17

IV.   This Case Presents Unsettled Questions of Law in this Circuit of Significant Importance to Class Action Jurisprudence (Factor 3). ............... 19

V.    The Early Stage of this Litigation Also Favors Granting the Petition (Factors 4 and 5). ............................................................................... 21

CONCLUSION ............................................................................................ 22

CERTIFICATE OF SERVICE ....................................................................... 24

ii

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bev Scott v. Fam. Dollar Stores, Inc.*,
733 F.3d 105 (4th Cir. 2013) ................................................................19

*Brown v. Nucor Corp.*,
785 F.3d 895 (4th Cir. 2015) ...............................................................12

*Buycks-Roberson v. Citibank Fed. Sav. Bank*,
162 F.R.D. 322 (N.D. Ill. 1995) ................................................... 3, 16, 17

*Chaney v. Crystal Beach Cap., LLC*,
2011 WL 17639 (M.D. Fla. Jan. 4, 2011) ..............................................10

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012) ...................................................16

*Damasco v. Clearwire Corp.*,
662 F.3d 891 (7th Cir. 2011) ................................................................10

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) .........................................................15

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ................................................................11

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ................................................................10

*Ehrhart v. Synthes (USA)*,
2007 WL 4591276 (D.N.J. Dec. 28, 2007) ............................................10

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) ..............................................................8, 9

*Fischer v. Dallas Fed. Sav. & Loan Ass'n*,
106 F.R.D. 465 (N.D. Tex. 1985) .........................................................17

*Glass v. Tradesmen Int'l, LLC*,
505 F. Supp. 3d 747 (N.D. Ohio 2020) .................................................16

*Graves v. Sw. & Pac. Specialty Fin., Inc.*,
2013 WL 5945851 (N.D. Cal. Nov. 4, 2013) ........................................10

*Huskey v. State Farm Fire & Cas. Co.*,
2023 WL 5848164 (N.D. Ill. Sept. 11, 2023) ........................................15

*Johnson v. Flakeboard Am. Ltd.*,
2012 WL 2237004 (D.S.C. Mar. 26, 2012)...........................................................19

*Lienhart v. Dryvit Sys., Inc.*,
255 F.3d 138 (4th Cir. 2001) .................................................................................9

*Louis v. Saferent Sols., LLC*,
685 F. Supp. 3d 19 (D. Mass. 2023)....................................................................15

*Manning v. Bos. Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ............................................................................ 9, 10

*Microsoft Corp. v. Baker*,
582 U.S. 23, 137 S. Ct. 1702 (2017) ................................................................2, 8

*Post v. AmerisourceBergen Corp.*,
2020 WL 6385621 (N.D.W. Va. Oct. 30, 2020) ................................................20

*Simpson v. Dart*,
23 F.4th 706 (7th Cir. 2022)................................................................................14

*Smith v. Wash. Post. Co.*,
962 F.Supp.2d 79 (D.D.C. 2013)..........................................................................2

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015) ..................................................................................... 12, 15

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ............................................................................................14

*Vallario v. Vandehey*,
554 F.3d 1259 (10th Cir. 2009) ..........................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................................16

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
252 F.3d 316 (4th Cir. 2001) .................................................................................9

*Williams v. State Farm Mut. Auto. Ins. Co.*,
2023 WL 5748421 (N.D. Ill. Sept. 6, 2023)........................................................16

*Zahran v. Bank of Am., N.A.*,
2021 WL 2226491 (W.D.N.C. June 2, 2021)......................................................19

## Other Authorities

Wright, Miller & Kane, Federal Practice & Procedure Civil § 1785.3
(3d. 2005)............................................................................................................10

iv

Melissa Hamilton, *The Biased Algorithm: Evidence of Disparate Impact on Hispanics*, 56 Am. Crim. L. Rev. 1553, 1561 (2019) ...........................................21

Michael Akinwumi, *et al.*, "An AI fair lending policy agenda for the federal financial regulators," Brookings (Dec. 2, 2021), available at https://www.brookings.edu/articles/an-ai-fair-lending-policy-agenda-for-the-federal-financial-regulators/ ..................................................................21

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

## PRELIMINARY STATEMENT

In this disparate impact discrimination action, Plaintiffs, who are each Black or Latino, sought home loans from Navy Federal Credit Union ("Navy Federal" or "Defendant"). Navy Federal denied each of their applications, although statistical evidence shows Navy Federal would have approved equally qualified White applicants. They allege Navy Federal's uniform underwriting policy—a secret, proprietary algorithm—systemically causes Navy Federal to reject otherwise qualified minority applicants like Plaintiffs and subjects minority applicants to unfavorable loan terms as compared to equally qualified White applicants. Plaintiffs filed a Consolidated Amended Complaint ("CAC") under both federal and state civil rights laws, including the Fair Housing Act ("FHA") and the Equal Credit Opportunity Act ("ECOA"). The CAC was based on three regression-controlled studies of Navy Federal's own Home Mortgage Disclosure Act ("HMDA") data showing lending disparities that apply across the entire putative class population.

Ruling on Defendant's motion to dismiss, the District Court recognized that Plaintiffs each stated a claim of "disparate impact" under federal law, crediting that "the statistical disparities [alleged in the CAC] reveal a disparate impact among non-white loan applicants and the underwriting algorithm and process is alleged to have caused the disparity." Order at 16.

1

However, the District Court *sua sponte* struck Plaintiffs' class allegations under Rule 23(d)(1)(D) with no explanation, beyond a single sentence stating it was doing so "[b]ecause the circumstances of each plaintiff's loan application process are so varied[.]" *Id*. at 22.

The Court's decision to strike the class allegations is a "disfavored, drastic remedy[.]" *Smith v. Wash. Post. Co.*, 962 F.Supp.2d 79, 89 (D.D.C. 2013). Because it was not based on full briefing and contains no analysis of the Rule 23 class certification factors, it is an understatement to say that it is "substantially weak"— the first and most important consideration for review under Rule 23(f).[1]

The Order is the product of the precise type of roving fact-finding that Rule 12 prohibits. Plaintiffs alleged they were subject to the *same, uniform*, underwriting *policy*. CAC ¶¶ 63-67, 89. Yet the District Court made a factual assumption— directly contradicted by the CAC's allegations—that unalleged "circumstances" of each Plaintiff's "process" were "varied."

Moreover, the Order is internally inconsistent. The District Court found that Plaintiffs established a "disparate impact" as to themselves, because Plaintiffs alleged: (1) class-wide "statistical disparities" showing a disparate impact, based on Navy Federal's own data; and (2) connected those disparities to Defendant's uniform

---

[1] Decisions to strike class allegations are subject to review under Rule 23(f). *Microsoft Corp. v. Baker*, 582 U.S. 23, 137 S. Ct. 1702, 1711 n.7 (2017).

"underwriting algorithm and process," Order at 16, that applies to the entire proposed class. In a world where Plaintiffs individually *can* state a claim based on Navy Federal's underwriting policy that applies to all applicants, it is fundamentally inconsistent to hold that there is no set of facts in which that same policy similarly harms absent class members.

Finally, the Court's conclusion that a disparate impact claim involving a "process [that is] varied" cannot be brought has no basis in the law. Class actions that involve the disparate impact of a "process [that is] varied"—*i.e.*, alleging the disparate impact of a uniform policy applied to people with varying facts—are routinely allowed to proceed to discovery and certification. *See, e.g., Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 335 (N.D. Ill. 1995) (certifying disparate impact class based on disparities in approval rates for mortgage loan applicants).

Put simply, the District Court misapplied the law, and the Order has weak analysis—if any at all. That alone is sufficient to grant this Petition for Review. However, additional factors also weigh in favor of review. First, litigation costs make it highly unlikely absent class members can file suit individually, despite experiencing the same disparate impact from the same underwriting policy as the named Plaintiffs. Second, the Order represents an opportunity for the Fourth Circuit to clarify the standard applied on a motion to strike class allegations under Rule

3

23(d)(1)(D): no published decision in this Circuit addresses the standard. Finally, the timing of the Order weighs in favor of review. This case is in its earliest stages, and Plaintiffs' next opportunity to seek review will occur only after entry of a final judgment.

## RELIEF SOUGHT

This Court should grant Plaintiffs' Rule 23(f) petition and, upon consideration of this Petition or after full briefing on the merits, reverse the District Court's Order striking class allegations, and remand for further proceedings with instructions that the District Court address class certification after substantial discovery and complete briefing.

## QUESTION PRESENTED

Did the District Court err by *sua sponte* striking class claims, without substantive analysis, while sustaining Plaintiffs' individual claims based on the same legal theories and the same underlying course of conduct?

## STATEMENT OF FACTS

### I. Navy Federal's Own Data Reveal Significant Racial Disparities in Mortgage Lending.

Navy Federal is one of the largest mortgage lenders in the country. Like all mortgage lenders, it is required annually to submit robust data to the Consumer Financial Protection Bureau pursuant to the HMDA. CAC ¶ 69. That HMDA data (in anonymized form) is in turn released to the public for the express purpose of

4

enabling analysis of whether the lender is engaging in discriminatory lending. *Id.* ¶ 78. Plaintiffs' disparate impact claims are rooted in three independent analyses of Navy Federal's HMDA data, each of which showed significant racial disparities. CAC ¶¶ 71, 73, 74-80. An analysis of Navy Federal's 2022 HMDA data found that, after controlling for more than a dozen variables, equally-qualified Black applicants were more than twice as likely to be denied a loan as White applicants, and Latino applicants were 85% more likely to be denied. *Id.* ¶¶ 74-80.[2]

## II.    Plaintiffs File Suit to End Navy Federal's Discriminatory Practices.

Plaintiffs filed their CAC on February 20, 2024. Each of the nine named Plaintiffs is Black or Latino, applied for a mortgage with Navy Federal, was qualified for the loan sought, but was denied due to their race[3] (or, in the case of Plaintiff Batchelor, offered a loan on worse terms). The CAC alleges Navy Federal has a unique, proprietary, and secret process for underwriting its home mortgage loans that applies to all prospective borrowers and that produces these disparate outcomes. CAC ¶¶ 63-68. While the complete details of that underwriting process are not

---

[2] The study further showed that Navy Federal approved mortgage applications for 77% of White applicants, but only 48% of Black applicants, 56% of Latino applicants, and 64% of Native American applicants, and that a White applicant with an annual income of $60,000 was more likely to be approved for a mortgage than a Black applicant with an annual income of $140,000. CAC ¶¶ 75-78.

[3] Plaintiffs allege claims for discrimination based on both race and ethnicity. For simplicity, this Petition refers to race and ethnicity together as "race."

known to Plaintiffs, *id.* ¶ 64, Plaintiffs alleged what *is* known: (1) Navy Federal has a "semi-automated" underwriting process; (2) that underwriting process uses a propriety algorithm that considers a host of variables that can be proxies for race; (3) the outputs from the algorithm are used by Navy Federal to make decisions regarding borrowing eligibility and credit terms; (4) the underwriting process is substantially the same each for the loan types sought by the named Plaintiffs and the other class members; and (5) this underwriting process is responsible for the disparate impacts experienced by Plaintiffs and class members. CAC ¶¶ 63-67, 89.

Plaintiffs filed claims for race discrimination under both federal and state civil rights statutes, including the FHA and ECOA. The CAC includes class claims seeking damages and declaratory/injunctive relief for the following national class:

> All minority residential loan applicants from 2018 through the present (the "Class Period") who submitted an application for any home mortgage loan to Defendant, who sought to refinance or modify a home mortgage loan through Defendant, and/or who sought a Home Equity Line of Credit from Defendant and whose application was: (a) denied; (b) approved at higher interest rates and/or subject to less favorable terms as compared to similarly situated non-minority applicants; or (c) processed at a rate slower than the average processing time of applicants submitted by similarly situated non-minority applicants.

CAC ¶ 241. Similar state specific subclasses are alleged. CAC ¶¶ 242-44.

### III.   Navy Federal Moves to Dismiss the CAC and Strike the Class Claims.

On March 21, 2024, Navy Federal moved to dismiss the CAC and to strike the class allegations. In its motion to strike, Navy Federal offered two arguments:

(1) that the class allegations should be struck in their entirety because a notice provision in the Navy Federal Membership Agreement should preclude any claims by absent class members, Dkt. 65 at 21-22; and (2) that the class allegations should be limited to the loans and races specifically represented by Plaintiffs. *Id*. at 22-23.

**IV.    The Court Allowed Individual Claims to Proceed and Struck—Without Explanation, Analysis, or Legal Support—the Class Claims Based on the Same Underlying Data.**

The District Court held that Plaintiffs' individual disparate impact claims under the FHA, ECOA, and for declaratory judgment could proceed, but dismissed Plaintiffs' disparate treatment theory of liability and the state law claims. Order at 23. In allowing the FHA and ECOA claims to proceed, the District Court reasoned that "the statistical disparities [alleged in the CAC] reveal a disparate impact among non-white loan applicants and the underwriting algorithm and process is alleged to have caused the disparity." *Id*. at 16. It also rejected Defendant's argument that a notice provision could preclude the claims—*the sole argument Defendant made for striking the class claims in their entirety*. *Id*. at 21.

However, the District Court struck Plaintiffs' class claims—claims based on the *same* data allegations as the individual Plaintiffs that the District Court found could proceed. The sum total of the District Court's explanation was: "Because the circumstances of each plaintiff's loan application process are so varied, and to promote the efficient use of resources and to streamline the claims to be considered

7

in this civil action, the Court will strike the class allegation and allow the nine plaintiffs to proceed on their federal ECOA and FHA disparate impact claims under Case No. 1:23-cv-1731 (LMB/WEF) or permit them to proceed individually." *Id.* at 22.

Defendant did not seek to strike the class claims on that basis, Plaintiffs were never presented the opportunity to brief or argue the issue, and the Court provided neither analysis nor legal support for its *sua sponte* action.

## REASONS FOR GRANTING THE PETITION

### I.   Legal Standard.

An order striking class allegations at the motion to dismiss stage is "functionally equivalent to an order denying class certification and therefore appealable under Rule 23(f)." *Baker*, 582 U.S. at 34 n.7. This Court applies the following five factors in considering a Rule 23(f) petition: (1) whether the district court's certification decision contains a substantial weakness; (2) whether the certification ruling is likely dispositive of the litigation; (3) whether the appeal will permit the resolution of an unsettled legal question of general importance; (4) the nature and status of the litigation before the district court (such as the presence of outstanding dispositive motions and the status of discovery); and (5) the likelihood that future events will make appellate review more or less appropriate. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).

This Court "consider[s] these factors on a holistic basis." *Id.* Further, the "substantial weakness" factor is viewed "on a sliding scale," with the other factors—such that "the stronger the case that [the] class certification [decision] was a clear abuse of discretion, the weaker a showing is needed on the other factors to gain review." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 144 (4th Cir. 2001).

In particular, this Court should grant a petition "[w]here a district court's certification decision is manifestly erroneous and virtually certain to be reversed on appeal." *Adair*, 764 F.3d at 357 (internal quotation marks omitted).

## II.   The Order Contains Clear Errors, Rendering It "Substantially Weak" (Factor 1).

Motions to strike are "generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). The First Circuit has explained that "such motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). In addition, the First Circuit found that numerous courts disapprove of striking class allegations because it preemptively terminates the class aspects of the case "before plaintiffs are permitted to complete the discovery to which they would otherwise be

9

entitled on questions relevant to class certification." *Id.* Many other courts agree.[4]

Nevertheless, the District Court struck the class allegations with no substantive explanation.

The District Court's decision is substantially weak, both standing alone and in light of the CAC's allegations of a single, common underwriting process and policy that was applied to all putative class members. CAC ¶¶ 63-67, 89.

### A.     The District Court's Decision Violates Rule 12.

As an initial matter, the District Court ignored the requirement that it accept "all well-pleaded allegations in the plaintiff's complaint as true and [draw] all reasonable factual inferences from those facts in the plaintiff's favor[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The District Court's statement that "each plaintiff's loan application process [is] varied" is untethered to any

---

[4] *See*, *e.g.*, *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class"); *Graves v. Sw. & Pac. Specialty Fin., Inc.*, 2013 WL 5945851, at *2 (N.D. Cal. Nov. 4, 2013) ("motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments pertaining to the class allegations"); *Chaney v. Crystal Beach Cap., LLC*, 2011 WL 17639, at *2 (M.D. Fla. Jan. 4, 2011) (the "shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form'"); *Ehrhart v. Synthes (USA)*, 2007 WL 4591276, at *5 (D.N.J. Dec. 28, 2007) (collecting cases and explaining that "the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery"); Wright, Miller & Kane, Federal Practice & Procedure Civil § 1785.3 (3d. 2005) ("the court's [certification decision] usually should be predicated on more information than the complaint").

allegation and, indeed, ***directly contradicted*** by the CAC. The CAC alleges that the racially disparate impact in home lending arises from Navy Federal's proprietary underwriting process—a process that, the CAC alleges, is *uniform* in character (CAC ¶¶ 63-68), "semi-automated" (¶ 83), and used for *all* applications (¶ 67).

In short, the process described in the CAC is not *varied*. That is the point: Navy Federal's underwriting policy and practice, which purports to be based on race-neutral criteria applied to everyone for every loan decision, causes a disparate impact.  By refusing to take the CAC's allegations as true, the District Court engaged in its own factfinding and declared that a purported (yet undefined and unpled) variability precluded class certification as a matter of law. Such factfinding at the pleading stage is reason enough itself for reversal. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011).

### B.      The Order Is Otherwise Legally Unsupportable.

#### 1.      *The Order is internally inconsistent.*

The District Court's decision to strike the class allegations, despite its recognition that each of the nine Plaintiffs had stated a disparate impact claim based on Navy Federal's common underwriting process, is internally irreconcilable. The class claims and the individual claims are based on the same fundamental allegation: three independent analyses of Navy Federal's own data show that Navy Federal's underwriting policy—which applies to all applicants—is denying minority

11

applicants' mortgage loans for which they are qualified, while approving loans for equally qualified White applicants.

Indeed, disparate impact claims are often subject to class treatment because they are based on such class-wide proof of the impact of a uniform policy. *Brown v. Nucor Corp.*, 785 F.3d 895, 898 (4th Cir. 2015). Under the well-settled three-step process for showing a disparate impact, a plaintiff initially has the burden of proving that a challenged policy/practice has caused or will likely cause a disparate impact. This is typically shown by a statistical analysis showing a racial or other disparity across all who experience the policy. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 527 (2015). Following that showing, a defendant has the burden to "prove that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests." *Id*. After the defendant makes such a showing, a plaintiff may still prevail by showing that the "substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect." *Id*.

Put another way, disparate impact claims, at their core, ultimately turn on two questions: (1) does a purportedly race neutral *policy*, applied to everyone, in fact disparately impact a protected *group*; and (2) does there exist a less discriminatory alternative to that policy? *Id*.

12

Plaintiffs' own disparate impact claims are no exception. Plaintiffs each allege that they were qualified for the loans they sought from Navy Federal, and that Navy Federal denied them those loans due to an underwriting policy that Navy Federal applies to all applicants. CAC ¶¶ 63-68. In support of these allegations, Plaintiffs cite three published studies based on Navy Federal's own data which show that minority applicants are denied loans for which they are qualified by Navy Federal, while Navy Federal approves similarly qualified White applicants under the same policy. *Id*. at ¶¶ 70-88. The District Court itself recognized that Plaintiffs alleged a uniformly-applied underwriting process that "is responsible for the disparate impact experienced by the plaintiffs *and the putative classes*." Order at 15 (emphasis added).

In finding that the individual Plaintiffs stated a disparate impact claim, the District Court ruled that "the statistical disparities reveal a disparate impact among non-white loan applicants and the underwriting algorithm and process is alleged to have caused the disparity." Order at 16. In other words, the District Court recognized that Plaintiffs had: (1) described a uniform policy applied by the Defendant; and (2) successfully linked that application of the uniform policy to harm to Plaintiffs as a result of Plaintiffs being "non-white." *Id*.

But those findings as to the individual Plaintiffs are impossible to square with the District Court's wholesale dismissal of the class allegations. If Plaintiffs were

13

harmed by an underwriting policy that Navy Federal applied to all applicants because of their race, "common sense" certainly makes it "plausible" that that policy harmed other absent class members in the same fashion. As the Seventh Circuit has explained, when "a plaintiff identifies a discrete … policy that allegedly results in discrimination … disparate impact claims are well suited for classwide adjudication" because "the policy either disparately impacted the plaintiff class or it did not." *Simpson v. Dart*, 23 F.4th 706, 712 (7th Cir. 2022); *see also Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442 (2016) (recognizing that representative proof from a sample could be used to show predominance of common questions)

### 2.    *The existence of multiple variables is no barrier to class certification.*

The District Court's decision is based on a hunch—found nowhere in the four corners of the CAC—that variations in loan applications exist in such a way that they will preclude class certification in this action even after discovery. Perhaps that will *eventually* prove true—*after discovery*[5]—but at the pleading stage, the District Court cannot inject facts found nowhere in the CAC to speculate on what discovery may one day show to preemptively gut the class claims.

---

[5] Plaintiffs respectfully submit that it will not. The HMDA data that Navy Federal is required to maintain under federal law has standardized fields for all applicants, and in the era of "big data" the types of analysis that can be efficiently performed by qualified technical experts has shifted dramatically, particularly on such a uniform, standardized dataset.

14

As a threshold matter, disparate impact liability is premised on the notion that discriminatory outcomes can occur due to application of facially race-neutral criteria—even criteria influenced by a wide variety of inputs. In that way, the claim "permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." *Inclusive Communities*, 576 U.S. at 521. Disparate impact class cases based on a purportedly race-neutral application of complex variables are quite frequent. *See*, *e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 275 (W.D. Tex. 2007) (certifying class alleging deficiencies in defendant's credit scoring procedure employing substantial number of purportedly race-neutral variables); *Huskey v. State Farm Fire & Cas. Co.*, 2023 WL 5848164 (N.D. Ill. Sept. 11, 2023) (sustaining class claim for disparate impact based on insurer's use of algorithmic decision-making tool with dozens of variables used to predict insurance claim fraud); *Louis v. Saferent Sols., LLC*, 685 F. Supp. 3d 19, 38 (D. Mass. 2023) (sustaining disparate impact class claim where plaintiffs alleged that defendant, which produced a numerical score based on multiple variables to determine viability of applicants for rental units, used an algorithm that over-relied on credit score and credit history).

Nor would the District Court's decision be justified if it were reframed as a concern with the Plaintiffs' ability to establish commonality or typicality under Rule 23(a). It is well-settled that questions of commonality and typicality "generally

15

involve[] considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Those issues are "more prudently reserved for a 'fully briefed class certification motion, rather than in the context of a motion to strike class claims at the pleading stage.'" *Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 765 (N.D. Ohio 2020); *see also Williams v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 5748421, at *6 (N.D. Ill. Sept. 6, 2023) (refusing to strike disparate impact class allegations due to disagreement regarding "variant circumstances" of purported decision-making because "[s]triking the class allegations at this stage, without the benefit of class discovery, would be premature"); *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (any motion to strike class allegations where motion raises "issues that would be decided in the motion for class certification" is premature).

Finally, even a more "varied loan application process" than what is presented here would not preclude class certification, including, for example, certification for injunctive relief under Rule 23(b)(2). That very result occurred in *Buycks-Roberson*, 162 F.R.D. at 335. There, plaintiff home loan applicants were seeking recompense for alleged racial discrimination in connection with defendant Citibank's home loan application approval process. Citibank allegedly allowed too much discretion on the part of its loan officers to apply underwriting factors, leading to racially disparate

16

results. *Id*. at 331. While the court found that variability of individual circumstances made damages calculation difficult—different individuals had different loan officers—it certified a class under Rule 23(b)(2), and bifurcated the litigation into a liability phase, at which point injunctive relief could be fashioned, and a damages phase, in which a special master could be appointed to determine individual claimants' damages (if any). *Id*. at 337. *See also Fischer v. Dallas Fed. Sav. & Loan Ass'n*, 106 F.R.D. 465, 467 (N.D. Tex. 1985) (certifying class of mortgage loan applicants for purposes of injunctive relief).

At such an early stage of the litigation, the District Court's striking of class allegations contained substantial weaknesses. Given the many forms a class certification decision may ultimately take and the fact that similar classes have been certified for mortgage loan discrimination before, Plaintiffs should have the opportunity to engage in discovery and subsequently seek certification here.

## III.    The District Court's Decision Is Likely Dispositive (Factor 2).

"Where the high costs of litigation grossly exceed an individual plaintiff's potential damages, the denial of class certification sounds the death knell of that plaintiff's claims." *Vallario v. Vandehey*, 554 F.3d 1259, 1263 (10th Cir. 2009). Filing suit and pursuing a disparate impact theory of liability on an individual basis will almost certainly cost more than the amount that could be recovered by an individual Plaintiff, particularly because the complexity and data-heavy nature of a

17

disparate impact case will entail millions of dollars in expert costs, not to mention high document discovery costs.

For any disparate impact case—whether on behalf of an individual or a class—experts will be required to review and analyze Navy Federal's underwriting algorithm and identify how it works and what factors cause the disparate impact. Once the disparate impact is shown and the cause identified, experts may be required to put forward a less discriminatory alternative. Finally, experts will also have to be engaged to conduct complex damages analyses. Each of these experts will be required to do the same or almost the same amount of work on behalf of one Plaintiff as they would on behalf of a class. Such is the fundamentally costly nature of a "disparate impact" analysis, relying as it does on a statistically proven harm caused by a purportedly neutral policy.

The costs of filing individual disparate-impact claims will be cost-prohibitive, and will almost certainly preclude any absent class members from filing claims and have a chilling effect on future actions.

**IV.    This Case Presents Unsettled Questions of Law in this Circuit of Significant Importance to Class Action Jurisprudence (Factor 3).**

There are two issues of import presented by the District Court's decision and independently meriting this Court's review.

*First*, this case presents the Fourth Circuit with an opportunity to address, for the first time, the legal standard to be applied to Rule 23(d)(1)(D), the Rule[6] the District Court cited as the basis for striking Plaintiffs' class allegations.[7] No published decision from this Circuit addresses the appropriate standard that should be applied to a Rule 23(d)(1)(D) motion, including whether application should be considered at the pleading stage or "after some discovery." *Zahran v. Bank of Am., N.A.,* 2021 WL 2226491, at *3 (W.D.N.C. June 2, 2021) (collecting unpublished district court opinions addressing Rule 23(d)(1)(D) reflecting consensus view that striking at the pleading stage is "rarely" appropriate); *see also Johnson v. Flakeboard Am. Ltd.,* 2012 WL 2237004, at *5 (D.S.C. Mar. 26, 2012) ("Rule 23(d)(1)(D) can be used to remove class allegations from a complaint *after* the class

---

[6] Rule 23(d)(1)(D) states that a Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

[7] Indeed, only a single published decision from this Circuit even cites Rule 23(d)(1)(D), *Bev Scott v. Fam. Dollar Stores, Inc.,* 733 F.3d 105 (4th Cir. 2013), but that case did not address the situation presently before the Court, and simply found that struck class allegations were sufficient to support a Rule 23(f) petition.

19

certification issue has be[en] *properly presented* and determined by a court." (emphasis added)).

Without clear guidance from this Circuit, District Courts are likely to continue to reach inconsistent results, as evidenced by the current Petition itself. *Compare* Order at 16 (granting motion to strike without allowing any discovery despite finding individual claims viable) *with Post v. AmerisourceBergen Corp.,* 2020 WL 6385621, at *5 (N.D.W. Va. Oct. 30, 2020) (collecting cases and explaining that "pre-discovery motions to strike class claims are consistently denied because class allegations should not be addressed at the pleading stage, before plaintiff has had full opportunity to discovery and to revise the class definition as necessary" and denying motion to strike after finding plaintiffs' individual claims survived a challenge under Rule 12(b)).

*Further*, this litigation provides an opportunity for this Court to explain that disparate impacts may be caused by so-called "big data." New research is exploring the phenomenon of "algorithmic bias," the notion that, because large data sets may themselves reflect a lengthy history of discrimination, their use to train algorithms and/or artificial intelligence can lead to a "biased machine."[8]  With this background,

---

[8] *See, e.g.*, Michael Akinwumi, *et al.*, "An AI fair lending policy agenda for the federal financial regulators," Brookings (Dec. 2, 2021), available at

the District Court's refusal even to allow discovery into the class-wide impact of Navy Federal's algorithmic decision-making due to a belief that the "process is varied" is particularly dangerous.  In a world ever-more dominated by "big data," machine learning, AI, and other automated processes like the algorithmic-decision-making alleged in the CAC, courts must recognize that the risk that those automated processes may have unintended and unexpected externalities—such as denying qualified Black and Latino applicants mortgage loans while approving equally qualified White applicants.

## V.    The Early Stage of this Litigation Also Favors Granting the Petition (Factors 4 and 5).

The fourth factor, the nature and status of the litigation before the District Court, also weighs in favor of granting relief. Discovery has yet to commence, and there are no dispositive motions pending. The Fourth Circuit's review would be

---

https://www.brookings.edu/articles/an-ai-fair-lending-policy-agenda-for-the-federal-financial-regulators/ ("Algorithmic systems often have disproportionately negative effects on people and communities of color, particularly with respect to credit, because they reflect the dual credit market that resulted from our country's long history of discrimination. This risk is heightened by the aspects of AI/ML models that make them unique: the ability to use vast amounts of data, the ability to discover complex relationships between seemingly unrelated variables, and the fact that it can be difficult or impossible to understand how these models reach conclusions. Because models are trained on historical data that reflect and detect existing discriminatory patterns or biases, their outputs will reflect and perpetuate those same problems); Melissa Hamilton, *The Biased Algorithm: Evidence of Disparate Impact on Hispanics*, 56 Am. Crim. L. Rev. 1553, 1561 (2019).

21

well-timed, and would not risk disrupting a case that is already far along. Similarly, the fifth factor—the likelihood that future events will make appellate review more or less appropriate—supports immediate review. With the class claims stricken, Plaintiffs' next opportunity to seek review will only occur after entry of a final judgment in this action. Forcing the parties to fully litigate a case, only to return to the threshold question of whether class claims are at issue after resolution of the merits, favors immediate review.

## CONCLUSION

The one-sentence ruling striking the class allegations is "substantially weak" and satisfies all of the other factors for Rule 23(f) review.

Date: June 13, 2024

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei
F. Peter Silva II
Andrea R. Gold
Glenn E. Chappell
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Tel. 202.973.0900
hzavareei@tzlegal.com
psilva@tzlegal.com
agold@tzlegal.com
gchappell@tzlegal.com

Wesley M. Griffith (Application for
Admission Forthcoming)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: 510-254-6808

22

Facsimile: 202-973-0950
wgriffith@tzlegal.com

Adam J. Levitt
Daniel R. Schwartz (Application for
Admission Forthcoming)
**DiCELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
alevitt@dicellolevitt.com
dschwartz@dicellolevitt.com

Ben Crump
**BEN CRUMP LAW PLLC**
122 South Calhoun Street
Tallahassee, Florida 32301
Telephone:  850-224-2020
ben@bencrump.com


Michael Dunn
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 West Morgan Street
Raleigh, North Carolina 27603
Tel. 919.600.5000
michael.dunn@milberg.com

Glen L. Abramson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 South Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone:  866-252-0878
gabramson@milberg.com

*Counsel for Plaintiff-Appellees*

23

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2024, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I further certify that on June 13, 2024, I caused a copy of this document to be delivered by United State mail and email upon the following:

Michaela Wilkes Klein
michaela.wilkesklein@wilmerhale.com
Ronald C. Machen
ronald.machen@wilmerhale.com
Jonathan E. Paikin
jonathan.paikin@wilmerhale.com
Karin Dryhurst
karin.dryhurst@wilmerhale.com
Andre Manuel
andre.manuel@wilmerhale.com
Brittany R. Warren
brittany.warren@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Thais R. Ridgeway
thais.ridgeway@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This petition complies with the type-volume limitation of Fed. R. App. P. 5(c) and 32(c)(2) because this petition contains 5,142 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2.      This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared using Microsoft Word in 14-point Times New Roman font.


Dated: June 13, 2024                              */s/ Hassan A. Zavareei*
                                                  Hassan A. Zavareei

                                                  *Counsel for Plaintiff-Appellees*

25