# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LAQUITA OLIVER, *et al.*,

                Plaintiffs,

    v.

NAVY FEDERAL CREDIT UNION,

                Defendant.

Case No. 23-cv-01731 (LMB) (WEF)

# DEFENDANT'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS
# PLAINTIFFS' SECOND AMENDED CONSOLIDATED COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ................................................................................................................................ 1
BACKGROUND ................................................................................................................................... 1
ARGUMENT ......................................................................................................................................... 4
    I.    The Second Amended Complaint Fails to State a Disparate Impact Claim
          On Behalf Of These Plaintiffs ................................................................................................ 5
    II.   The SAC Should Be Dismissed With Prejudice ..................................................................... 9
CONCLUSION ................................................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 5

*Betsey v. Turtle Creek Associates*,
    736 F.2d 983 (4th Cir. 1984) ................................................................................ 5, 6

*Chennault v. Mitchell*,
    923 F. Supp. 2d 765 (E.D. Va. 2023) ...................................................................... 9

*Cozzarelli v. Inspire Pharmaceuticals, Inc.*,
    549 F.3d 618 (4th Cir. 2008) ................................................................................... 9

*Goines v. Valley Community Services Board*,
    822 F.3d 159 (4th Cir. 2016) ................................................................................... 4

*Letke v. Wells Fargo Home Mortgage, Inc.*,
    2015 WL 1438196 (D. Md. Mar. 27, 2015) ............................................................ 5

*Miller v. Countrywide Bank, N.A.*,
    571 F. Supp. 2d 251 (D. Mass. 2008) ..................................................................... 7

*Reyes v. Waples Mobile Home Park Ltd. Partnership*,
    903 F.3d 415 (4th Cir. 2018) ................................................................................ 5, 6

*Secretary of State For Defence v. Trimble Navigation Ltd.*,
    484 F.3d 700 (4th Cir. 2007) ................................................................................... 4

*Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ............................................................................ 5

*Wards Cove Packing Co. v. Atonio*,
    490 U.S. 642 (1989) ................................................................................................. 6

### STATUTES

15 U.S.C.
    § 1691 .................................................................................................................. 4, 5
    § 1691e ..................................................................................................................... 5

42 U.S.C.
    § 1981 ............................................................................................................................1
    § 3605 ............................................................................................................................5
    § 3613 .........................................................................................................................5, 7

## OTHER AUTHORITIES

Fannie Mae, *Selling Guide: Fannie Mae Single Family* (June 5, 2024),
    https://singlefamily.fanniemae.com/media/39241/display .............................................7, 8

Martinez, Emmanuel & Malena Carollo, *Dozens of Mortgage Lenders Showed
    Significant Disparities. Here Are the Worst*, The Markup (Nov. 2, 2021),
    https://themarkup.org/denied/2021/08/25/dozens-of-mortgage-lenders-
    showed-significant-disparities-here-are-the-worst ..............................................................8

Navy Federal Credit Union, *Mortgage FAQs*, https://www.navyfederal.org/loans-
    cards/mortgage/frequently-asked-questions.html#mortgage-accord-2 ...............................8

NCUA Office of the Chief Economist Research Note, *Observations on Credit
    Unions' Mortgage Lending to Minority Borrowers*,
    https://ncua.gov/files/publications/analysis/observations-credit-unions-
    mortgage-lending-minority-borrowers.pdf ..........................................................................8

Tolan, Casey et al., *The Nation's Largest Credit Union Rejected More Than Half
    of its Black Conventional Mortgage Applicants*, CNN Business (Dec. 14,
    2023), https://www.cnn.com/2023/12/14/business/navy-federal-credit-
    union-black-applicants-invs/index.html ..............................................................................8

Veteran's Administration, *Lender's Handbook VA Pamphlet 26-7, Revised*,
    https://benefits.va.gov/warms/pam26_7.asp (revised Feb. 22, 2019) .................................8

## INTRODUCTION

In granting Plaintiffs leave to amend the Consolidated Complaint, Dkt. No. 56, the Court provided clear instructions about what each Plaintiff needed to do in order to plausibly state a disparate impact claim arising out of the outcomes on their particular loan applications: plead specific information about their mortgage applications, including income, debt, and home value, and the reasons provided for their loan outcomes. As the Court recognized, all this information is in each Plaintiff's possession. Rather than heeding the Court's clear directions, the Second Amended Consolidated Complaint ("SAC") relies once again on the same conclusory allegations and adds only one new detail, an estimated credit score, for one Plaintiff.

Despite five opportunities to do so, Plaintiffs once again failed to provide sufficient detail about their individual circumstances to plausibly state a claim. Specifically, none of the factual allegations necessary to plead a causal connection between the decision Navy Federal made on their loans and the alleged "secret" underwriting algorithm appears in the SAC. And the denial letters (incorporated by reference in the SAC) make clear that the objective credit criteria Plaintiffs failed to plead explain the outcomes, rendering implausible Plaintiffs' disparate impact claims. The SAC should be dismissed, this time with prejudice.

## BACKGROUND

On May 24, 2024, the Court held a hearing on Navy Federal's motion to dismiss and to strike Plaintiffs' First Amended Complaint ("FAC"), which asserted disparate treatment and disparate impact claims under the Fair Housing Act (FHA), Equal Credit Opportunity Act (ECOA), 42 U.S.C. § 1981, and state law on behalf of nine named plaintiffs and a putative class. The Court explained that "[t]here are too many factual issues that are not adequately addressed in the complaint" and "not enough detail to be able to have this case go forward." Hr'g Tr. 4:15-16, 7:12-13. The Court "direct[ed] the plaintiffs to redevelop their complaint in a much more

1

specific manner as to each plaintiff that's going to go forward" if they hoped to "to make this out as a plausible case" in the amended complaint. Hr'g Tr. 9:3-6, 17-18.

The Court identified the additional information expected for each plaintiff: "what their income was when they applied for the mortgage," "what their debt situation was at the time they applied for the mortgage," "the value of the house that they were applying for when they applied for the mortgage," and "the various facts that the defendant pointed out in the motion to dismiss," Hr'g Tr. 9:9-16. The Court directed Plaintiffs to provide "a clearer picture of exactly how—what the parameters are for why these particular mortgages were denied" given that each individual plaintiff is in possession of that information and thus "should be able to get that detail." Hr'g Tr. 7:13-14, 11:22-24. Those additional facts were "going to be necessary" for the case to move forward. Hr'g Tr. 7:11-15. On May 30, 2024, the Court issued an order and opinion dismissing the FAC in part, striking the class allegations, and ordering Plaintiffs to file an amended complaint consistent with its reasoning. *See generally* Dkt. Nos. 91 ("Mem. Op."), 92.

On July 1, Plaintiffs filed the SAC, after an eighteen-day extension. Dkt. No. 102.[1] When requesting the extension, Plaintiffs specifically noted the additional time was needed, in part, to "make the necessary changes to the one or more resulting amended complaints to comply with the Court's Order." Dkt. No. 94 at 2. Although the SAC *removed* certain allegations, it did not add any of the information the Court identified as necessary for the case to move forward, with one exception.[2] Plaintiffs continue to assert the same conclusory allegations questioning

---

[1] For the Court's convenience, attached is Exhibit A, a redline comparing the SAC to the FAC. *See* Ex. A.

[2] Despite the Court's admonishment, Mem. Op. at 9 n.3, the SAC still includes allegations that the Court found irrelevant, like allegations concerning Navy Federal's website, *see* SAC ¶¶ 13-14, 100.

2

Navy Federal's commitment to its membership, despite the fact that Navy Federal ranks third amongst leading lender in the percentage of mortgage loans made to Black borrowers.[3] Because the existing allegations were summarized in the Court's Memorandum Opinion ruling on Navy Federal's first Motion to Dismiss, *see* Mem. Op. at 2-6, this memorandum provides only a brief overview, noting new allegations. The following chart (which appeared in Navy Federal's first Motion to Dismiss and the Court's Opinion) summarizes the allegations regarding Plaintiffs' circumstances, highlighting the information that the Court directed Plaintiffs add to the amended complaint:

|  | R. Otondi | D. Walker | C. Batchelor | J. Jackson | L. Oliver |
|---|---|---|---|---|---|
| **Race/Ethnicity** | African American | African American | African American | African American | African American |
| **Product** | First mortgage | VA cash-out refinance | First mortgage | First mortgage | First mortgage |
| **Income** | $100,000 | "exceeding $100,000" | "more than $140,000" | *Not alleged* | "over $95,000" |
| **Credit Score** | "above 700" | "above 620" | "above 700" | "above 700" | "above 650" |
| **Debt** | "minimal outstanding debt" | *Not alleged* | *Not alleged* | "minimal outstanding debt" | *Not alleged* |
| **Value of House** | *Not alleged* | *Not alleged* | *Not alleged* | *Not alleged* | *Not alleged* |

|  | C. Gardner | C. Carr | M. Pereda | C. Hill |
|---|---|---|---|---|
| **Race/Ethnicity** | African American | African American | Hispanic/Latina | African American |
| **Product** | First mortgage | VA first mortgage | First mortgage; refinance | Cash-out refinance |
| **Income** | $92,000 | More than $130,000 with spouse | "several hundred thousand dollars per year" | $80,000 |

---

[3] Press Release, Navy Federal Credit Union, *Navy Federal Credit Union Responds to Allegations Concerning Its Home Lending Practices* (Dec. 18, 2023), https://www.navyfederal.org/about/press-releases/2023/navy-federal-responds-to-home-lending-allegations.html, cited in SAC ¶ 97.

3

| | | | | |
|---|---|---|---|---|
| **Credit Score** | "approximately 800" | "above 620" | "above 650" | **"above 670"** |
| **Debt** | *Not alleged* | "minimal outstanding debt obligations consisting of minimal credit card debt and a car loan." | "minimal debt, aside from existing mortgage loan" | "minimal debt obligations" including car loan and $10k in credit card debt |
| **Value of House** | *Not alleged* | *Not alleged* | *Not alleged* | *Not alleged* |

Aside from adding a single credit score for one Plaintiff (bolded above), *see* SAC ¶ 233, the SAC added no allegations about the individual Plaintiffs, even though all the information required by the Court is in their possession. Neither did Plaintiffs plead the reasons Navy Federal provided for their mortgage denials, as it is required to do, *see* 15 U.S.C. § 1691(d). And the SAC nowhere alleges that the individual Plaintiffs' mortgage applications were denied because of the alleged "secret" underwriting algorithm. According to the letters sent to each plaintiff, Plaintiffs were denied mortgages based on various objective criteria, including because Navy Federal was unable to verify their incomes, because they had insufficient income for the loans for which they applied, and/or because they had other excessive debt obligations. *See* Ex. B.[4]

## ARGUMENT

Because Plaintiffs do not adequately plead that their loan outcomes were the result of the asserted "secret" underwriting algorithm, as opposed to objective industrywide credit criteria, the

---

[4] "While a 12(b)(6) motion focuses on the allegations of the complaint, . . . a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State For Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *see* SAC ¶¶ 7-8, 10, 21-22, 24-29, 92, 114-115, 129, 157, 170, 184, 202, 214, 223, 237, 258 (alleging Navy Federal denied the individual plaintiffs' loan applications). Navy Federal filed the denial letters under seal and discusses them in this public filing at a high level. While the Court may consider the denial letters, the actual reasons for the outcomes are not necessary to show that Plaintiffs failed to meet their burden to plead a plausible claim.

SAC fails to state a disparate impact claim on behalf of these Plaintiffs under the FHA or ECOA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (explaining that complaint must include facts rendering claim plausible, not just conceivable); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face"). The Court should dismiss the SAC with prejudice, as this is Plaintiffs' fifth attempt.

I. **The Second Amended Complaint Fails To State A Disparate Impact Claim On Behalf Of These Plaintiffs**

The FHA and ECOA provide an "aggrieved person" a cause of action to challenge discrimination in mortgage lending decisions "because of race." 42 U.S.C. §§ 3605(a), 3613 (FHA); *see* 15 U.S.C. §§ 1691(a), 1691e (ECOA). Courts have recognized that the phrase "because of race" encompasses claims where a practice has a disparate impact, even if there is no discriminatory intent. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 535 (2015). To plead a disparate impact claim, the SAC must allege 1) a disparate impact on the protected class; 2) a specific policy of the defendant; and 3) a causal connection between the policy and the disparate impact. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 425 (4th Cir. 2018).

For a causal connection between the alleged policy and the alleged disparate impact, plaintiffs must show that "a given policy had a discriminatory impact on them as *individuals*." *See Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 (4th Cir. 1984); *see, e.g.*, *Letke v. Wells Fargo Home Mortg., Inc.*, 2015 WL 1438196, at *8 (D. Md. Mar. 27, 2015) (dismissing disparate impact claim because plaintiff failed to adequately plead that "lending policies resulted in discriminatory impact on [plaintiff] as an individual"). "The correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the total group *to which the*

*policy was applied*." *Betsey*, 736 F.2d at 987 (emphasis added); *see also Reyes*, 903 F.3d at 426 (no disparate impact claim where "no barriers or practices deterring *qualified* nonwhites from applying" (emphasis added) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989))).

Here, the Court's Opinion concluded that the FAC adequately alleged (at the pleading stage) statistical disparities that showed a disparate impact and a "secret" underwriting algorithm and process alleged to have caused the statistical disparity. Mem. Op. at 16; *see also* Dkt. No. 56 ¶ 64.[5] Because Plaintiffs have not followed the Court's direction to allege their own circumstances, however, the SAC fails to adequately allege that the asserted policy had a disparate impact *on them*.

As the Court previously recognized, Plaintiffs did not "adequately detail their credit score, assets, loan value, property value, ratio of the total amount of debt secured by the property to the property value ('LTV'), or ratio of total monthly debt to total monthly income ('DTI') at the time they applied for any of Navy Federal's mortgage products." Mem. Op. at 11. The FAC also did not "provide[] the reasons given by Navy Federal as the basis for the denial." Mem. Op. at 5. The SAC does not correct these omissions, making it implausible that Plaintiffs were denied based on some "secret" algorithm rather than those objective credit criteria, which are consistent with government-sponsored enterprise guidelines.[6] *Cf. Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 253, 256 (D. Mass. 2008) (finding that causation was established only

---

[5] Navy Federal must accept the allegations as true and accepts the Court's prior ruling for purposes of this motion but disputes that Plaintiffs ultimately will be able to show either.

[6] *See, e.g.*, Fannie Mae, *Selling Guide: Fannie Mae Single Family* (June 5, 2024), https://singlefamily.fanniemae.com/media/39241/display, 163-171 (guidelines for use of LTV ratios), 299-354 (guidelines for income assessment and verification), 487-491 (guidelines for use of DTI ratio).

6

when pricing decisions were based on discretion, rather than "objective standards that define creditworthiness" including "credit history, credit score, debt-to-income ratio, or loan-to-value ratio").

Moreover, while it need not do so to decide this motion, for the eight Plaintiffs whose loans were denied, the Court may consider the denial letters which show that the outcomes of their applications were based on identifiable credit criteria.  For example, three Plaintiffs (Mr. Carr, Mr. Otondi, and Ms. Pereda) were denied at least in part because Navy Federal was unable to verify their income.  Ex. B at 3, 21, 26.  Five plaintiffs (Mr. Gardner, Ms. Oliver, Mr. Jackson, Mr. Otondi, and Ms. Pereda) were denied at least in part because their income was insufficient for the amount of the loan requested.  Ex. B at 6, 9, 15, 18, 21, 26.[7]  And three plaintiffs (Ms. Hill, Ms. Pereda, and Mr. Walker) were denied at least in part because they had delinquent past or present credit obligations.[8]  Ex. B at 12, 23, 29.  The SAC does not identify these reasons, and there is no allegation that these explanations were not in fact the reasons for the denials.  And because Plaintiffs do not otherwise allege their qualifications, the SAC provides no inference otherwise.  For instance, Mr. Jackson's application was denied solely because his income was insufficient for the amount of the loan.  Ex. B at 15.  Yet Mr. Jackson does not allege his income or the amount of the loan, or otherwise plead that it was not his income that led to the denial.

---

[7] Exhibit B contains two denial letters for Mr. Gardner because he appealed his original loan denial.

[8] The denial letters also demonstrate that the FHA claims of four Plaintiffs (Mr. Otondi, Ms. Hill, Mr. Carr, and Mr. Walker) are barred by the FHA's two-year statute of limitations.  *See* 42 U.S.C. § 3613(a)(1)(A).

7

And none of the plaintiffs who were denied due to lack of income verification allege that they provided the required documentation, which is identified on Navy Federal's website.[9]

There is an additional reason that Ms. Batchelor does not sufficiently plead a disparate impact claim: there are no alleged statistical disparities connected to her loan. Ms. Batchelor alleges that her loan was approved, but at a higher interest rate than she otherwise would have received but for her race. SAC ¶¶ 142-144. Neither the CNN nor Markup reports (the reports that looked at Navy Federal specifically) assessed interest rates.[10] SAC ¶¶ 73-80. Only the NCUA Research Note did,[11] which "does not speak to Navy Federal's practices given that it analyzes the credit union industry as a whole," Mem. Op. at 16; SAC ¶ 85. Simply put, there is no allegation in the SAC that there were any statistical disparities in Navy Federal's loan pricing.

---

[9] *See* Navy Federal Credit Union, *Mortgage FAQs*, https://www.navyfederal.org/loans-cards/mortgage/frequently-asked-questions.html#mortgage-accord-2 (recommending that applicants collect W-2 forms for the last two years, pay stubs for the last 1-3 months, personal tax returns for the last two years, and monthly debt and living expenses as part of the income verification process). *See also* Fannie Mae, *supra* note 6, at 299-354 (guidelines for income verification); Veteran's Administration, *Lender's Handbook VA Pamphlet 26-7, Revised*, at 4-5 to 4-21, https://benefits.va.gov/warms/pam26_7.asp (revised Feb. 22, 2019) (guidelines for required income documentation).

[10] *See* Casey Tolan et al., *The Nation's Largest Credit Union Rejected More Than Half of its Black Conventional Mortgage Applicants*, CNN Business (Dec. 14, 2023), https://www.cnn.com/2023/12/14/business/navy-federal-credit-union-black-applicants-invs/index.html; Emmanuel Martinez & Malena Carollo, *Dozens of Mortgage Lenders Showed Significant Disparities. Here Are the Worst*, The Markup (Nov. 2, 2021), https://themarkup.org/denied/2021/08/25/dozens-of-mortgage-lenders-showed-significant-disparities-here-are-the-worst.

[11] NCUA Office of the Chief Economist Research Note, *Observations on Credit Unions' Mortgage Lending to Minority Borrowers*, https://ncua.gov/files/publications/analysis/observations-credit-unions-mortgage-lending-minority-borrowers.pdf.

Because Plaintiffs plead no plausible connection between their loan outcomes and the asserted disparate impact, the SAC fails to state a claim, and it should be dismissed.[12]

## II. The SAC Should Be Dismissed With Prejudice

The Court provided clear instructions for Plaintiffs to "redevelop their complaint in a much more specific manner as to each plaintiff that's going to go forward" in order "to make this out as a plausible case."  Hr'g Tr. 9:4-6, 17-18.  Yet Plaintiffs failed to follow the Court's directive, even with the benefit of an eighteen-day extension, *see* Dkt. No. 95.  The SAC provides one additional allegation about one individual plaintiff, *see* SAC ¶ 233, and none of the information the Court specifically listed.

When "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability," a court may dismiss a complaint with prejudice.  *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).  Dismissal with prejudice is likewise justified when a plaintiff has made repeated and "unsuccessful attempt[s] at pleading a plausible claim."  *Chennault v. Mitchell*, 923 F. Supp. 2d 765, 773 (E.D. Va. 2023) (adopting report and recommendation granting motion to dismiss with prejudice).

Plaintiffs have now been given multiple opportunities to include the requisite allegations and have not done so.  Ms. Oliver initiated this lawsuit with the first complaint in December 2023.  Dkt. No. 1.  Two more class complaints followed, naming four additional plaintiffs.  Dkt. Nos. 33, 43.  Plaintiffs then filed a consolidated complaint in February 2024, removing five plaintiffs and adding eight new ones.  Dkt. No. 56.  Most recently, on July 1, Plaintiffs filed the Second Amended Consolidated Complaint.  Dkt. No. 102.  Despite five attempts to plead a

---

[12] Because Plaintiffs' declaratory judgment claim, SAC ¶ 266, rests on their ability to state a disparate impact claim and Plaintiffs fail to do so, their declaratory judgment claim should also be dismissed.

9

plausible claim, Plaintiffs still have been unsuccessful. Granting Plaintiffs yet another opportunity would be futile, and the SAC should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Second Amended Consolidated Complaint should be dismissed in its entirety with prejudice.

Date: July 23, 2024                                  Respectfully submitted,


/s/ *Michaela Wilkes Klein*
Ronald C. Machen (*pro hac vice*)
Jonathan E. Paikin (*pro hac vice*)
Karin Dryhurst (*pro hac vice*)
Michaela Wilkes Klein (VA Bar No. 89675)
Andre Manuel (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
ronald.machen@wilmerhale.com
jonathan.paikin@wilmerhale.com
karin.dryhurst@wilmerhale.com
michaela.wilkesklein@wilmerhale.com
andre.manuel@wilmerhale.com


Thais R. Ridgeway (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
thais.ridgeway@wilmerhale.com

*Counsel for Defendant Navy Federal Credit Union*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Dated: July 23, 2024                                     Respectfully Submitted,

/s/ *Michaela Wilkes Klein*
Michaela Wilkes Klein (VA Bar No. 89675)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
michaela.wilkesklein@wilmerhale.com